## Ed Truelove v. The State.

### No. 2605.    Decided January 14, 1903.

**1.—Continuance—Diligence—Sheriff's Return—New Trial.**

Where defendant was indicted July 2d, the case set for trial July 6th, and on the 6th defendant sued out process for his witnesses to another county which was received and returned by the sheriff in the latter county on the 7th, stating the witnesses could not be found after diligent search (which was unreasonable), and it appeared on the motion for new trial, by affidavits, that two of the witnesses were in the county on the date of the sheriff's return, and that the county in which they resided was a populous one; Held, the diligence was sufficient and the new trial should have been granted, the evidence of said witnesses being material.

**2.—Same.**

On a trial for theft of money, where the defense was a conspiracy between alleged accomplices to send defendant to the penitentiary in order that they might get possession of his place of business; and it was proposed to prove by the absent witnesses that the accomplices sought to procure their help to send defendant to the penitentiary; Held, the testimony was material and the continuance and new trial should have been granted, the diligence being sufficient.

**3.—Theft of Money—Evidence.**

On a trial for theft of money from the pants pockets of a person asleep, it was not competent to prove the reason that no chair was kept in the room where the theft was committed, it not appearing that defendant knew the reason why a chair was not kept in said room.

**4.—Same—Accomplice Testimony—Charge.**

On the trial for the theft of money from the pants pockets of an unknown person who was asleep, where the accomplice alone makes out a case as to the corpus delicti and defendant's connection therewith, the other evidence being exceedingly meager as to its inculpatory character; Held, that the court should have specifically instructed the jury that the corpus delicti could not be proved alone by the testimony of accomplices, and that it was necessary to corroborate them as to the commission of the offense.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Charles F. Clint.

Appeal from a conviction of theft of money over the value of $50; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the theft of $230, on the 31st day of May, 1902, from a person to the grand jurors unknown.

Briefly stated, the facts proved by the accomplices were, that defendant was running an establishment known as the "Blue Goose," a saloon. Adjoining the Blue Goose were two rooms, one of which was occupied by Maud Calloway, the kept mistress of Ed Truelove, and the other occupied by Lillie Harrington, the kept mistress of Everett Hill. There was a door between these two rooms covered by hanging curtains, and in Lillie Harrington's room a trunk sat close to these curtains. Everett Hill and Lillie Harrington turned State's evidence. They, in substance, testified that when Lillie came to the Blue Goose saloon she agreed to work the panel game for defendant. She had no chairs in her room, which fact would compel a man staying with her to put his clothes upon the trunk next to the door of Maud Calloway's room. That when anyone went to bed with Lillie she was to touch a button at the head of her bed, which would ring a bell in the saloon and notify defendant that the clothes were on the trunk. On the evening in question, the unknown stranger came into Lillie's room, undressed, and put his clothes upon the trunk. Lillie rang the bell, and defendant, Everett Hill and Maud Calloway went into Maud's room, where Maud opened the door, parted the curtains, and reaching through, took from the pants lying on the trunk two packages of money, which she handed to defendant Truelove, who took $230 from one of the packages, and handed the other package back to Maud Calloway, who put them back through the curtains into Lillie Harrington's room. That on the following Monday morning defendant gave Lillie Harrington $100 as her part of the money. The unknown stranger was not seen or heard of after he left Lillie's room that night. This is, in brief, the substance of the testimony of Everett Hill and Lillie Harrington, the accomplices. The supposed confessions of defendant which were put in evidence are fully shown in the opinion.

The theory of the defense was, that the the matter was a concocted scheme or plan made up by the accomplices by which to send defendant to the penitentiary in order that Everett Hill and his uncle might regain possession of the Blue Goose saloon, which they had run at one time.

*Robert B. Allen, Miller & Foraker,* and *Lemmon & Lively,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of theft over the value of $50, and given five years in the penitentiary.

Appellant made an application for continuance, which the court overruled, and presented the same grounds in motion for new trial. The action of the court in this regard is assigned as error. The application is based on the absence of the witnesses Roy Aiden, Hardy, Florence Reynolds, and Dem Barnes. The application shows that defendant was indicted on July 2, 1902, and the case was set down for trial on July

6th. On the 6th defendant made application for process for these witnesses to Beaumont, in Jefferson County. Process was issued, and sent to the sheriff of Jefferson County, who received the same on the 7th of July, 1902, and returned it the same day, with the statement that none of the witnesses were found in Jefferson County after diligent search. When the case was called the witnesses were absent, and appellant craved a postponement or continuance of the case in order to secure them. It occurs to us that the diligence used for these witnesses was sufficient, and that the sheriff was guilty of laches in making the return he did on the same day, especially when it is shown that Jefferson County, and Beaumont in particular, where said witnesses are alleged to reside, was a populous place, and it would be impossible to have made a diligent search for said witnesses in one day. This is especially true when it is shown, by affidavits filed in connection with the motion for new trial, by two of said witnesses, that on the 7th of July they were in Beaumont. We also think, under the circumstances developed on the trial, that the testimony of said witnesses was material, and there can be no doubt that at least two of them, Roy Aiden and Florence Reynolds, would testify as alleged in the application, inasmuch as their affidavits setting out their testimony appear in the record. An examination of the record discloses the fact that the State's case depends almost wholly on the testimony of Everett Hill and Lillie Harrington, two confessed accomplices, both as to the corpus delicti of the offense and appellant's connection therewith. Their testimony develops a most peculiar theft. They show that a much larger amount of money was taken from the prosecutor, who was some unknown person, sleeping with Lillie Harrington, and that only $230 was taken, and the balance of the roll of greenbacks restored him; that is, placed in his pants pocket. Perhaps this is the only case on record where the thief, under the circumstances of having secured a large amount of money, restored half or more of the same to the injured party without any particular necessity therefor appearing. These accomplices differ materially between themselves as to the mode of the theft. Hill testifies that the Harrington woman took the money out of the unknown person's pants pockets, and handed it through an open door to appellant, and that appellant, after receiving the money, took out of the roll $230, and returned the balance to Lillie Harrington. She denies this in toto, but testifies that, if any money was taken, appellant and the accomplices took it through the open door themselves. In addition to this, we can only arrive at how the case got into the courts inferentially. It is not shown that any person ever made complaint to the authorities of having any money stolen on that occasion. The unknown person has never been seen by any other person than the accomplices. So this suggests that this case must have found its way into the courts through the accomplice Hill. Now, appellant desired the testimony of the absent witnesses in order to show that the whole case was a job put up against him by said accomplices, in order that Everett Hill could oust appellant from the possession of

the Blue Goose saloon and get it himself. It is shown by the affidavits of the absent witnesses that they would testify to conversations between Hill and said witnesses, in which he sought to procure them to testify against appellant and to help him put up a job by which appellant could be sent to the penitentiary. In the light of this record, we think this testimony was material, and that appellant should have had a continuance or a new trial based on the allegations contained in the motion.

. We do not think it was competent to prove by the witnesses Lillie Harrington or Everett Hill the reason no chair was kept in the room where the theft was committed, unless it was shown that such reason was within the knowledge of appellant. As we understand the bill no connection or knowledge is shown on the part of appellant as to the reason why no chair was kept in said room.

The court should have specifically instructed the jury to the effect that the corpus delicti of the offense could not be proven alone by the testimony of accomplices, as the peculiar circumstances of the case called for a charge on that phase of the case. The accomplices make out a case both as to the corpus delicti—that is, the taking of the money—and appellant's connection therewith, but the charge of the court appears to confine the necessity for corroboration to appellant's connection with the offense, thus assuming either that the offense was sufficiently made out without other evidence or that it was not requisite to corroborate them as to the corpus delicti. The evidence outside of these accomplices is exceedingly meager. It is only found in the evidence of Mueller and Flanary, in which they testify as to certain conversations had with appellant and his expressions, which the State undertook to use as confessions against him. To say the least of it, if these expressions can be called a confession, it is by no means strong. Mueller's evidence indicates that the parties were talking about the case, and that when they asked appellant where the unknown man was he told them that nobody knew where he was except himself. He told them that they were not going to stick him, but that he had ten witnesses by whom he could prove that somebody else stole the money. He states that this occurred in a joking way, and that it was characteristic of the defendant to laugh and joke with other persons in that manner. Flanary testifies, substantially, that appellant told him he was the only man in the city of Dallas who knew the unknown man alleged to have been robbed; that he did not live in the State. He told Flanary, who was assistant county attorney, that he wanted to hire him when he got out of office and wanted to pay him in advance to defend against any case brought against him; that he had $10,000 in bank to fight this or any other case they might get up against him. Now, if this be considered as evidence of an inculpatory character, it is, as stated, the only evidence that tends to corroborate the accomplices as to the commission of any offense,—that is, the taking of any money from some unknown man, and under the peculiar circumstances of the case regarding the testimony of the accomplices, which does make out a case, the jury should

have been directly instructed on this phase of the case, and the necessity to corroborate the accomplices as to the commission of the alleged offense. Crowell v. State, 24 Texas Crim. App., 404; Hanson v. State, 27 Texas Crim. App., 140.

There are other errors assigned, but we do not deem it necessary to discuss them; but, for those which have been discussed and pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*