E. F. Stovall v. The State.

No. 9028.  Delivered December 23, 1925.

Rehearing denied May 19, 1926.

1.—Bribery—Evidence—Properly Admitted.

Where, on a trial for bribery, the appellant having been shown to have been a county commissioner of Hill County, and testimony having been offered by the state showing that he had agreed with one Bibb to accept a bribe of $7,000.00 in consideration of his voting to give said Bibb a contract to build certain roads, for which he was to receive certain bonds, there was no error in permitting evidence of statements by appellant made subsequent to his alleged agreement, and prior to the final consummation of the agreement by the payment to him by said Bibb of the $7,000.00, and all that was said and done between appellant and Bibb from beginning of the negotiations until their final consummation, was one transaction.

2.—Same—Evidence—Accomplice Testimony—Explaining Motive—Properly Admitted.

testify, and that while in jail he phoned the county attorney that he had decided to come clean and testify. He was entitled to explain and give in evidence any fact shedding light on the reflective fact that he was testifying under promise of immunity. See Branch's Ann. P. C., Secs. 92 and 94.

### 3.—Same—Evidence—Properly Received.

Where, on a trial for bribery of a county commissioner, it is shown that one Bibb had agreed to pay appellant $7,000.00 to vote for him being awarded a contract and bonds, and that he did later pay the $7,000.00, there was no error in permitting the witness Arlitt to testify that Bibb tried to borrow money from him in Austin to handle this deal.

### 4.—Same—Evidence—Properly Admitted.

Where the evidence disclosed that appellant had been paid a large sum of money as a bribe, there was no error in permitting the state to prove that two days thereafter appellant deposited the sum of $3,000.00 in the First State Bank of Floydada, Texas, to his own account.

### 5.—Same—Reproducing Testimony—Predicate Held Sufficient.

Where the state showed by the father of the witness Bishop that said witness had removed from this state, and had taken up a permanent residence at Long Beach, in the state of California, this was a sufficient predicate to authorize the introduction of the testimony of said witness given upon a former trial of the case.

### 6.—Same—Charge of Court—Held Correct.

Under the allegations as set out in the indictment, we think no error appears in paragraph five of the court's charge wherein he told the jury that if they believed beyond a reasonable doubt that appellant consented to accept the promise of $7,000, under the agreement that he would vote to let a contract to Bibb et al., to convict him.

### 7.—Same—Charge of Court—"Corrupt Intent"—Properly Omitted.

Where, in his affirmative charge to the jury, the court failed to couple with said charge that the bribe must have been accepted with a "corrupt intent," no error is shown. Our statute does not require allegation or proof that the acceptance of a bribe must be with a "corrupt intent."

### 8.—Same—Charge of Court—On Date of Offense—Not Error.

There was no error in charging the jury to convict, if the illegal transaction took place on September 10, 1920, because the proof showed that the contract was let and the vote of appellant cast on September 4 of said year. The facts of this case leave no doubt that the acceptance of Bibb's offer of money by appellant was before the vote was cast for the letting of the contract, and we see no reason for varying from the statutory rule in this state that it is only necessary to allege and prove a date prior to the return of the indictment, and within the period of limitation. Distinguishing James v. State, 163 S. W. 61, and Perry v. State, 155 S. W. 214.

### 9.—Same—Charge of Court—On Accomplice Testimony—Not Error.

Where the court, in his main charge, submitted the law of reasonable

doubt in its application to the entire case, there was no error in failing to couple the reasonable doubt in charging on the accomplice testimony. Following Hutto v. State, 7 Tex. Crim. App. 48, and other cases cited.

### 10.—Same—Charge of Court—On Accomplice Testimony—Held Correct.

Appellant's criticisms and objections to the court's charge on accomplice testimony appear to us unsound. The charge as given follows that laid down in Brown v. State, 57 Tex. Crim. Rep. 576, which has been approved in many subsequent cases. See cases cited in opinion. Distinguishing Crowell v. State, 24 Tex. Crim. App. 404, and other cases cited by appellant.

### 11.—Same—Requested Charge—Properly Refused.

Appellant requested the court to charge the jury that the accomplice Green could not be corroborated by the declarations or acts of Bibb, who was also an accomplice. Bibb did not testify. Green was a party to the acceptance of the bribe. There was clearly established a conspiracy between appellant Green and Bibb to accept a bribe in consideration of the vote of Green and appellant. Acts and declarations of either Green, Bibb or appellant or all of them during the existence of this conspiracy were admissible. The state was properly permitted to prove the acts and declarations of Bibb as testimony in chief against appellant, and same was properly admitted.

### 12.—Same—Evidence—Properly Admitted.

What occurred in Austin in August, 1920, when appellant Green and Bibb went to see Arlitt, in an effort by Bibb to secure from Arlitt the money to pay to appellant and Green, was in pursuance of the general conspiracy and not objectionable on the ground that it was a collateral offense, evidence of which should have been limited in the charge of the court.

### 13.—Same—Allegation and Proof—No Variance.

Where, on a trial for bribery, the indictment alleges a certain sum paid as the bribe, and the proof as to the amount does not correspond, there is no fatal variance. In bribery the amount involved in nowise affects the grade or penalty of the offense. No distinction can be drawn between such allegations and proof as between the offenses of theft and bribery.

### 14.—Same—Venue—Correctly Established.

When the agreement to pay and to accept the bribe was entered into in Hill County, the venue of the offense was properly laid in that county, notwithstanding that a part of the conspiracy was shown to have occurred in Austin and Floydada.

### 15.—Same—Evidence—Held Sufficient.

Appellant contends that the evidence is insufficient to sustain the conviction, in that the testimony of the accomplice, Green, is not sufficiently corroborated. With this, we cannot agree. There was ample corroboration of Green's testimony in showing appellant in company with Green and Bibb in Austin and in Dallas, bank deposits made by appellant in Dallas and Floydada, corresponding in dates and amounts with Green's testimony, and believing the corroboration fully meets the requirements of our law, the cause is affirmed.

ON REHEARING.

### 16.—Same—Evidence—Of Accomplice—Properly Admitted.

On rehearing appellant takes issue with our original opinion on the admission of the testimony of accomplice Green on his redirect examination. We cannot agree with his criticisms. Green had made an agreement with the State to testify if given immunity. When called on to testify he refused to keep this agreement and was forced to do so by the court, who sent him to jail. On cross examination these facts were shown by appellant. On redirect the State inquired further into the matter and disclosed other details, all of which were pertinent to show his attitude toward his co-defendant, the appellant. This redirect examination was not offered as corroboration of his direct testimony and did not have such effect. Distinguishing Anderson v. State and other cases cited.

### 17.—Same — Requested Charge — On Accomplice Testimony Properly Refused.

We cannot recede from our original opinion in regard to the refusal of the court to charge that Bibb was an accomplice, and could not corroborate the accomplice Green. Bibb did not testify as a witness in the case. His acts and declarations admitted in evidence by other witnesses were correctly admitted because he was shown to have been a co-conspirator with Green and appellant, and such acts and declarations were shown to have occurred during the existence of the conspiracy.

### 18.—Same—Continued.

The court charged the jury that before they could consider the acts and declarations of Bibb, occurring in appellant's absence, that they must believe from the evidence beyond a reasonable doubt independent of such acts and declarations, that appellant and Bibb had conspired to commit bribery, and to accept a bribe, and this was all that appellant was entitled to under the law.

Appeal from the District Court of Hill County. Tried below before the Hon. W. L. Harding, Judge.

Appeal from a conviction for bribery, penalty seven years in the penitentiary.

The opinion states the case.

*Will Hancock* of Waxahachie, *Frazier & Averitte, Collins, Dupree & Crenshaw* of Hillsboro, for appellant.

*Will M. Martin,* County Attorney Hill County; *Morrow & Stollenwerck* of Hillsboro, *Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Ellis County of the offense of bribery, and his punishment fixed at seven years in the penitentiary.

Appellant was a county commissioner of Hill County during part of the year of 1920. He had held such office for four years

and had been defeated for re-election. A number of road districts in the county had voted bonds for the purpose of road improvement. On September 4, 1920, the commissioners' court voted to sell road bonds and let road contracts to Bibb & Hughes. This indictment against appellant charged him with having agreed and consented to accept a bribe from Mr. Bibb of said firm, for his vote in favor of selling said bonds and letting said contracts to said firm. The various questions raised on the trial will be discussed as they appear in the able brief filed on behalf of appellant.

The first complaint is directed at the testimony of state witness Green. Green had testified that he was present when appellant agreed with Bibb to accept $7,000.00 for his vote in favor of letting the contracts and selling the bonds to Bibb & Hughes. Appellant's objection in this complaint was that Green undertook to testify that thereafter he heard appellant and Bibb discussing the proposition, and heard appellant tell Bibb that he would go ahead and vote for Bibb's firm to have the contract if Bibb would keep on trying to get the money which he had promised,—and that Bibb assured appellant that he would keep on trying. The ground of appellant's objection is that this testimony tended to prove a different contract and agreement from that set out in the indictment. We do not think so. We think from an examination of the whole record that all that was done and said between appellant and Bibb from the beginning of the negotiations until the complete consummation of the deal, including the payment of the money, was all part of one transaction and that no variance appeared. It is made to appear that the original agreement between Bibb and appellant rested upon the consideration of a promise to pay on the part of Bibb, at some future time; that Bibb made various efforts to get the money to pay; that he did not succeed in getting it until the court had voted to award his company the contract and the bonds; that thereafter he did pay the amount agreed upon. The fact that he did so pay, would materially support the proposition of a prior promise to pay.

Complaint is made of Green's testimony on redirect examination by the state to the effect that when promised immunity in case he would testify against appellant, he refused to accept or to so testify, and was thereupon sent to jail by the District Judge and kept there until he did agree to testify. The objection was that this was hearsay as to appellant, and was self-serving as to Green. The authorities cited by appellant

seem to us inapt. The testimony does not belong in the category of hearsay evidence. The witness had been made to admit on cross-examination by appellant that he was testifying for the state under promise of immunity; he was entitled upon redirect examination by the state to explain and give in evidence any fact shedding light on the reflective fact that he was testifying under promise of immunity. We think his testimony that he had been offered immunity if he would testify and had refused and that this resulted in his incarceration in jail for contempt and he was there kept until he agreed to testify, would in a measure exonerate him and that same was admissible. See Branch's Ann. P. C., Secs. 92 and 94. What we have just said applies also to the complaint appearing in bill of exceptions No. 13. What Green said in telephoning the County Attorney that he was ready to talk and would come clean, could mean no more than that he wanted to tell what he was now testifying to as a witness on this trial, the truthfulness of which was impugned by appellant's cross-examination and the bringing out of the fact that he was so testifying under promise of immunity.

Bill of exceptions No. 16a complains of additional testimony received from state witness Arlitt, who had already sworn that in Austin both in and out of appellant's presence Bibb had urged that he had to have money and that witness furnish him money to swing this deal—that Bibb came to witness in Waco and tried to get him to advance $11,000.00 "to handle this deal." The objection set out in the bill is lengthy but is summed up in appellant's brief by a statement that the testimony of Arlitt was merely his conclusion as to the effect of his conversation and not a statement of the conversation itself. In our opinion the testimony might be deemed a short-hand rendering of the conversation, but the record fails to show that on cross-examination of said witness appellant asked for or desired the conversation itself, when he might have availed himself of it had he so desired. The state's proof showing that Bibb paid to appellant, after he voted favorably, all of the money promised, we would hold that prior efforts of Bibb to get the money from Arlitt would be part of the transaction and provable.

In his bill of exceptions No. 17 appears appellant's objection to the introduction of a deposit slip purporting to show the deposit on October 2, 1920, of $3,000.00 in the First State Bank of Floydada, Texas, for account of E. F. Stovall. The bill

with its qualification shows that on said date appellant deposited in currency in said bank $3,000.00. None of the objections made appear tenable. By other testimony the State showed payments by Bibb to appellant of large amounts of money in currency within two days preceding said date.

This trial was had in July, 1924. The state offered to introduce the testimony of Irwin Bishop given on a former trial, it being asserted that Bishop had removed from this state since said former trial and was at the time of this trial a resident of the state of California. As a predicate the state placed on the stand Bishop's father, who swore that his son, Irwin, was then living at Long Beach, California, to which place he had moved in March, 1923; that he was working in a bank there. Witness said his son had written that he could not come to Texas during the current year but might visit his father the year following. We think the predicate sufficient to show that the witness had permanently removed from this state, and that his testimony given upon the former trial was properly received.

The indictment alleged that appellant agreed and consented to accept $7,000.00, etc., etc. "The said bribe and seven thousand dollars * * * agreed and consented to be accepted by defendant * * * was then and there promised to be paid by said Bibb to said Stovall," etc. Such being the allegation in the indictment, we think no error appears in paragraph five of the court's charge wherein he told the jury that they should convict if they believed beyond a reasonable doubt that appellant consented to accept the promise of seven thousand dollars under the agreement that he would vote to let a contract to Bibb et al.

The charge of the court told the jury in plain terms that if they believed beyond a reasonable doubt that E. F. Stovall in Hill County, in his official capacity, consented to accept the promise of $7,000.00 from W. S. Bibb, under agreement with said Bibb that the vote of said Stovall as commissioner would be given in favor of letting a contract, etc., to Bibb & Hughes, then they should find the defendant guilty, etc. Our statute does not require allegation or proof that the acceptance of a bribe be with corrupt intent, and we think it not error for the court to omit such proposition in his charge.

There is nothing in appellant's contention that the trial court erred in his charge in telling the jury to convict if the illegal transaction took place on September 10, 1920, it being insisted

that the proof showed that the contract was let and the vote of appellant cast on September 4th of said year, and that the agreement to accept a bribe must have antedated such acts. The facts of this case leave no room for doubt that the acceptance of Bibb's offer of money by appellant, if any, was before the vote was cast for the letting of the contract, and we see no reason for varying from the statutory rule in this State that it is only necessary to allege and prove a date prior to the return of the indictment, and within the period of limitation. James v. State, 163 S. W. Rep. 61; Perry v. State, 155 S. W. Rep. 214. There was no affirmative defensive theory involving the proposition that there was in fact an agreement to accept a bribe but that same was made after the vote was cast in favor of letting the contract. We find nothing in Ruffin v. State, 38 S. W. 469, cited by appellant, contrary to this view.

Appellant's eighteenth exception to the court's charge was directed at the failure of said charge to tell the jury that they must believe the testimony of the accomplice witness beyond a reasonable doubt. The omission of such instruction in the paragraph submitting the law of accomplice testimony would not be erroneous if elsewhere in the charge the law of reasonable doubt was properly submitted as to the whole case. This was true here. Hutto v. State, 7 Texas Crim. App. 48; McCall v. State, 14 Texas Crim. App. 363; Powell v. State, 28 Texas Crim. App. 393; Eden v. State, 41 Texas Crim. Rep. 522.

The charge on accomplice testimony told the jury that they could not convict on the testimony of the accomplice Green unless they believed same to be true, and that it showed appellant to be guilty of the offense charged, and even then they could not convict unless the accomplice was corroborated by other evidence tending to connect the appellant with such offense, and the corroboration was not enough if it merely showed the commission of the offense, but it must also tend to connect the defendant therewith, and then from all the evidence in the case the jury must believe beyond a reasonable doubt that appellant was guilty. The charge follows that laid down in Brown v. State, 57 Texas Crim. Rep. 576, which has been approved in many subsequent cases. Ice v. State, 208 S. W. Rep. 343; Watson v. State, 237 S. W. Rep. 298; Moon v. State, 237 S. W. Rep. 938; Pate v. State, 239 S. W. Rep. 967; Newton v. State, 94 Texas Crim. Rep. 382; Walker v. State, 94 Texas Crim. Rep. 653; Anderson v. State, 95 Texas Crim. Rep. 346; Henderson v. State, 97 Texas Crim. Rep. 247.

Appellant insisted, by exception to the main charge and special charge refused, that the jury be told that they could not convict unless there was before them evidence other than that of the accomplice, which showed the commission of the crime. Such we believe to be the effect of the charge given, and are of opinion that instruction beyond those so given and hitherto approved by this court, could but confuse the jury. Analysis of the charge given reveals that the jury were told that even though they believed the accomplice testimony to be true, and that it showed appellant to be guilty, this would not warrant conviction, but other testimony must appear which tended to connect the accused with the commission of the particular crime charged, and if the testimony other than that of the accomplice went no further than to show the crime to have been committed by some other, it would not be enough to support the conviction. We do not believe evidence could "tend to connect" the accused with the offense committed, as required by Art. 801 Vernon's C. C. P., which evidence did not support the proposition that the offense was in fact committed. Appellant cites Crowell v. State, 24 Texas Crim. App. 404; Hanson v. State, 27 Texas Crim. App. 140; Truelove v. State, 44 Texas Crim. Rep. 389, and Williams v. State, 199 S. W. Rep. 296, as supporting his contention. The Hanson and Williams cases relate only to the facts and say nothing of the charge. The charges given in the Crowell and Truelove cases are criticised but not set out in our opinions, and we have no means of knowing what they may have lacked of being similar to the charge given in this case. This court has never hesitated to reverse cases when the evidence offered in behalf of the State as tending to connect the accused with the crime charged did not, in our opinion, support the State's claim that the crime had been committed. See the Hanson and Williams cases, supra; also Townsend v. State, 90 Texas Crim. Rep. 552; McDaniel v. State, 247 S. W. Rep. 854. We might further observe that, in our opinion, to engraft on our practice the proposition that the jury must be instructed as to two kinds of corroboration, viz: corroboration as to the commission of the offense, and also as to the connection of the accused therewith—would not clarify but only serve to confuse the jury.

Asserting that Mr. Bibb was an accomplice as well as Green, appellant excepted to the charge because it failed to tell the jury that they could not consider the acts or declarations of Bibb as corroborative of Green's testimony. Bibb was not a

witness in the case. It was shown by Arlitt, Norwood and Culberson that appellant, Bibb and Green went to Austin sometime before the court let the contract in question. It was further shown that Arlitt was a bond buyer who had been to Hillsboro in connection with the proposed sale of the road bonds; that appellant, Bibb and Green went to Arlitt's office where Mr. Norwood was, and in the course of several hours conversation, during most of which Green and appellant occupied an office just across the hall from that in which Norwood and Arlitt were, and during which time Bibb made repeated visits back and forth from one office to the other, many efforts were made by Bibb, after consulting first with one party and then the other, to induce Arlitt to advance various sums of money which he said were necessary to swing the deal and to handle the boys and which Arlitt understood to mean that Bibb was trying to get from him money to bribe the county commissioners to vote in favor of letting him have the bonds and contract. During this conversation and after an interview with appellant and Green, Bibb told Arlitt that he thought he could swing the deal for $11,000.00, his original proposition being $25,000.00. The upshot of the entire conversation was the refusal of Arlitt to advance any money unless the bonds were forthcoming, and Bibb, Green and appellant left Austin and returned by various routes to Hillsboro where the proposition had been originally made and which was the county in which were situated the road districts, and of which Green and appellant were county commissioners. The trial court told the jury in his charge that before they could consider the acts and declarations of Bibb, in the absence of appellant, they must believe from the evidence beyond a reasonable doubt, independent of such acts and declarations— that appellant and Bibb had conspired to commit the offense of bribery, and consenting to accept a bribe; if they did not so believe, or had a reasonable doubt as to same, the jury were told they should disregard and not consider the declarations and acts of Bibb, if any, in the absence of appellant. A review of the entire testimony satisfies us that the jury were justified in believing that appellant and Bibb were acting together with a joint illegal intent, viz.: that on the part of Bibb to obtain and pay money to appellant and Green as a bribe, and that on the part of appellant as consenting to receive as a bribe money thus obtained. So concluding, we are of opinion that the acts and declarations of Bibb during the pendency of

such conspiracy were admissible against appellant whether in his presence or out of it. The facts before us differentiate this case from those relied on by appellant in his proposition that the court should have instructed the jury that they could not consider the acts and declarations of Bibb as corroborative of the testimony of the accomplice Green. In the Reeves case, 263 S. W. Rep. 278, no acting together of appellant and the supposed accomplice, whose statement alone was relied on to show such acting together, was shown in any other way save by such statements of said accomplice. None of the other cases cited by appellant are in point. We think the State within its rights in proving the acts and declarations of Bibb, not for the purpose of corroborating Green primarily but as testimony in chief admissible against appellant, and that appellant's objection in this regard was not sound.

We are not in accord with appellant's claim that what occurred in Austin in August, 1920, when appellant, Green and Bibb went to see Arlitt, and Bibb attempted to secure the money from him to pay to Green and appellant, constituted a collateral offense so as that testimony thereof required limitation in the charge of the court. Said trip and what was then said and done was but a part of the transaction, the whole of which was necessarily in evidence in order to show the steps leading up to the bribe charged, supporting and shedding light on the proposition of the agreement to pay—and to accept—a sum of money, as made between Bibb and appellant.

Nor do we believe there existed any fatal variance between the allegation and the proof, based on the amounts alleged and shown by the testimony. An allegation of an agreement to accept as a bribe a sum of money, might be supported by proof that a different sum was agreed upon or was paid. The amount involved in nowise affects the grade or penalty of the offense. We see no reason for holding differently in this regard in a bribery case from what has been the universal holding of this court in theft and other cases where the allegation of a sum certain is held sustained by proof of a sum different in amount.

Nor was there a failure in the proof of venue. The agreement, if any, was originally made in Hill County, and the occurrences at Austin, Dallas, and Floydada but constitute parts of the State's case by showing that Bibb was trying to carry out, or had carried out, such agreement.

Green's testimony, if true, made out a case against appellant, the gist of which was that he agreed and consented to accept a bribe from Bibb as a consideration for his vote, the delivery of which money bribe was finally agreed to be subsequent to the agreement to pay. If the jury believed Green and that other evidence supported the proposition that appellant had so agreed, the case met the demand of the law.

Upon the testimony as to whether Green was corroborated both as to the commission of the offense and of appellant's connection with same, we observe that Green testified in substance that he and Stovall agreed with Bibb, first that Bibb should pay him $4,000.00 and Stovall $11,000.00 for their votes in favor of letting the road contracts and selling the bonds to Bibb & Hughes; that shortly after this the three went to Austin, Bibb promising to pay them in Austin. He detailed the things said and done in Austin in the unsuccessful effort to get the money or any part of it from Arlitt; also that Bibb and appellent agreed that Bibb should keep on trying to get the money. Several conversations were had between the parties after they got back to Hillsboro. Each time appellant would tell Bibb to keep on trying to get the money, and finally he told Bibb he would go ahead and vote as they had agreed provided Bibb would keep on trying, which Bibb agreed to do. Green said that shortly after the contract was let he went with Bibb and appellant to Dallas where they stopped at the Southland hotel, it being about September the 10th or 11th. Here Bibb paid appellant $4,000.00 in currency. After witness and appellant got in the Interurban, appellant showed witness a bank book and a deposit entry of $3,000.00. Shortly after this Green testified that he and appellant went to Waco and that there Bibb paid appellant $3,000.00 in currency, which appellant put in a hand-bag, saying he was going to Floydada in his car the next day and that he was going to take the money with him. This payment was the latter part of September or the first of October. The testimony of Irwin Bishop was that he was cashier of the First State Bank of Floydada, in October, 1920; that on October 2nd, 1920, appellant deposited $3,000.00 in currency in said bank. It was shown that on October 4th appellant deposited a draft in said bank drawn on the City National Bank of Dallas for $3,000.00; also that appellant's account with the City National Bank of Dallas was closed on October 7th by the honoring of this draft from the Floydada bank. The signature of appellant to the signature cards in the

Dallas bank and to the draft above mentioned, were identified. The deposit in the Dallas bank was shown to have been made on September 11th of $3,000.00 by appellant. The draft offered in evidence was dated October 4th, signed by appellant, in favor of the First State Bank of Floydada, for $3,000.00, and was drawn on the City National Bank of Dallas. It was in testimony by parties other than Green, that appellant, Green, and Bibb were at the Southland hotel September 10th or 11th. A witness named Smith testified that appellant came to him after he was defeated for re-election in 1920 and told him that various road districts had voted something over $900,000.00 in bonds and that the bonds were going to be sold and contracts let before he went out of office and that witness could get them if he was willing to "buy them up." Appellant told this witness that he must hear from him right away. We do not deem it necessary to go into a particular analysis of this testimony, but are of opinion that it sufficiently corroborates the testimony of the witness Green, and makes out the State's case, and tends to connect appellant with the commission of the offense as well as sufficiently shows the offense to have been committed.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—That part of our opinion is attacked which held admissible the testimony of Green upon re-direct examination that when promised immunity in case he would testify before the grand jury he refused to accept it and was sent to jail by the judge and kept there for two days, when he telephoned for the county attorney to come to the jail that he (Green) had decided to "come clean." It is asserted that when a witness is induced to testify under improper influence or motive he may not be corroborated by proof that he had theretofore made statements consistent with his evidence given on the trial when the improper influence or motive was also operating when the statement was made. We are referred to Anderson v. State, 50 Texas Crim. Rep. 134; Reese v. State, 67 S. W. 325; Conway v. State, 26 S. W. 401; Short v. State, 61 S. W. 305; Clay v. State, 51 S. W. 212. These cases become applicable only upon the assumption that Green's statement was usable to corroborate himself as an accomplice witness, or was a statement consistent with his evidence not receivable

under the circumstances of the case. We find ourselves unable
to agree with either of these assumptions. The entire cross-
examination of Green is made a part of the bill. Appellant
elicited from him on cross-examination the following:

"I did not ask for a contract with the county attorney of
Hill County and the district judge that if I testified against
Stovall I would not be prosecuted. I did make a contract where-
by I would not be prosecuted if I would testify against Stovall
in this case. Before I made this contract of immunity to pro-
tect myself against prosecution if I testified against Stovall
I went before three or four grand juries in Hill County. I was
put under oath on each occasion. *They asked me about these
very matters involved in this case, road matters in Hill County
and the bonds. I told these grand juries on each and every
occasion I did not know anything Stovall had done wrong. Every
time they brought me before them I told those facts. After I
made my contract of immunity if I would testify against Stovall
I told this story for the first time.* * * * *I never changed my
story until after I got a contract of immunity for myself.* * * *
*I detailed the same testimony before the grand jury."*

Upon re-direct examination the witness testified that after
he was promised immunity he refused to testify, was sent to
jail after he had refused to talk, sued out a writ of habeas
corpus and upon hearing was released; that he was again called
before the grand jury and again ordered to jail by the district
judge, sued out another writ of habeas corpus and upon hearing
of that was remanded to custody; that after remaining in jail
two days he called the county attorney over the telephone and
requested him to come to the jail; that he was ready to "come
clean." What he said to the county attorney in the conversa-
tion is not related. Appellant's whole contention seems to be
based upon the construction of the use of the two words "come
clean." In our original opinion we intended to say nothing
more than that perhaps the witness Green had in his mind
at the time he telephoned the county attorney that he was
ready to tell the truth about the matter, and perhaps did
divulge to the county attorney the same matters which he had
testified upon the trial, but whatever statement he made to
the county attorney upon the occasion in question was never
proven. It appears clearly from the cross-examination of this
witness that appellant himself elicited the statement that after
he had made his contract of immunity he then told "this story
for the first time," that is, the story he related upon the trial.

Under these circumstances we do not feel called upon to discuss the soundness of the rule invoked by appellant as it seems to have no application. The statement made by Green upon re-direct examination in the light of what had been elicited on cross-examination would appear harmless and does not furnish just ground for complaint.

Appellant urges that the trial court should have instructed the jury that Bibb was an accomplice and that they could not consider his acts or declarations as corroborative of the accomplice witness Green and contends that our opinion in the present case on this point is in conflict with Reeves v. State, 263 S. W. 278, and Wilson v. State, 250 S. W. 1033. In each of the cases mentioned we were discussing the sufficiency of the evidence and not the propriety of an instruction. It is expressly stated on rehearing in Reeves' case that no purpose was intended to modify the rule that acts and declarations of a co-conspirator pending the conspiracy were provable against another co-conspirator on trial. If the question was whether the acts and declarations of Bibb (testified to by Arlitt who was not an accomplice witness) were sufficient to corroborate the testimony of Green then we would have the exact question decided in the cases mentioned, but this is not the point. If Bibb had testified as a witness an appropriate instruction on accomplice testimony as applied to him would have been applicable although he was a co-conspirator. He did not testify but his acts and declarations as a co-conspirator were proven by Arlitt and others as original evidence against appellant. The court charged the jury that before they could consider the acts and declarations of Bibb occurring in appellant's absence that they must believe from the evidence beyond a reasonable doubt, independent of such acts and declarations, that appellant and Bibb had conspired to commit bribery and to accept a bribe and this was all appellant was entitled to under the law. If appellant's contention were sound then in every case where one conspirator was called by the State as a witness and the acts or declarations of other conspirators were proved by parties not connected with the crime, and these acts and declarations supported the testimony of the conspirator who had given his evidence, a charge similar to that sought by appellant in the instant case would be demanded. We think this is unsound and would be extending the rule regarding a charge upon accomplice testimony too far.

Other questions are presented in appellant's motion which

we have considered but think it unnecessary to discuss, believing they were probably disposed of in our formal opinion.

The motion for rehearing is overruled.

*Overruled.*