Anthony Dwayne **BINGHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 0891–92.

Court of Criminal Appeals of Texas.

Nov. 15, 1995.

Scott Lemke, McKinney, for appellant.

David Waddill, Assistant Dist. Atty., McKinney, Jeffrey L. Van Horn, Assist. State's Attorney, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON STATE'S MOTION FOR REHEARING ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

On original submission in this cause, a plurality of the Court held that the court of appeals did not err to interpret Article 38.14, V.A.C.C.P. to require corroboration of a hearsay statement of a non-testifying accomplice to the offense before that statement can be considered by the jury in its deliberations upon appellant's guilt. Three judges dissented with opinion to this holding, one judge did not participate, and one judge concurred only in the result, opining that the issue was not of sufficient importance to merit our review. Given the indefiniteness of our disposition of the issue on original submission, and in the face of a persuasive motion from the State

Prosecuting Attorney, we granted rehearing in this cause.

### PLAIN MEANING IN CONTEXT

Article 38.14 reads:

"A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The issue here is whether out-of-court statements of an accomplice to the charged offense constitute "testimony" under this provision, such that the corroboration requirement adheres. On original submission a plurality of the Court held that, under the broadest dictionary definition of the word, *viz:* "evidence based on observation or knowledge[,]" an accomplice's out-of-court statement may be considered "testimony." *The New Merriam–Webster Dictionary* (1989), at 741. The Code of Criminal Procedure provides that "[a]ll words, phrases and terms used [therein] are to be taken and understood in their usual acceptation in common language, except where specially defined." Article 3.01, V.A.C.C.P. Because "usual acceptation" of the word "testimony" embraces out-of-court statements, the plurality reasoned, we are not at liberty to construe it any more narrowly. "Rather, when read in context, such words should be open to the broadest possible understanding to which they are reasonably susceptible in the English language. *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992)." Slip op. at 3.

██ Of course the plurality was correct to begin its analysis with the text of Article 38.14 itself, for that is the best indicator of legislative intent. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991). And "if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted for it, we ordinarily give effect to that plain meaning." *Id.* (Footnote omitted). On reflection, however, we conclude that the plurality focused too narrowly on the word "testimony" itself, paying insufficient attention to the context in

which the word appears in the statutory text. While common acceptation of an unspecialized word is certainly critical, it is the common acceptation of the word in the context in which it appears that is determinative. V.T.C.A. Government Code, § 311.011(a). It seems clear enough to us that, in the context of Article 38.14, the "testimony" that must be corroborated is the legally understood kind—the kind even the plurality on original submission conceded is "the most common ordinary definition," slip op. at 2—*viz:* "Evidence given by a competent witness under oath or affirmation; as distinguished from evidence derived from writings, and other sources. Testimony is particular kind of evidence that comes to tribunal through live witnesses speaking under oath or affirmation in presence of tribunal, judicial, or quasi-judicial." Black's Law Dictionary (6th ed. 1990), at 1476.

In isolation, a word can have various shades of meaning, and may even have several, mutually exclusive meanings. The State Prosecuting Attorney points to the word "conviction" as it appears variously in the Code of Criminal Procedure. He argues that no one would contend that, when the Code refers to "conviction," it means "the state of being convinced: strong belief." *The New Merriam–Webster Dictionary,* supra, at 175. It is, indeed, our conviction that this is not the intendment of the Code. The problem in the instant case is slightly different, of course. The debate here is not which of two different meanings to assign a word in a particular statutory setting. Here the question is whether to assign the word "testimony" its "broadest possible understanding," as the plurality did on original submission, slip op. at 3, or a narrower, more technical, but also more common definition that is subsumed within the broader one. Though the question is, thus, slightly different than that posed by the State's example, the key to resolving it is much the same. We must decide whether the broader or narrower meaning is meant according to the context in which it appears in the statute as a whole.

■ It is sufficiently plain to us that the language of Article 38.14 invokes the narrower, more common definition of "testimony."

The provision begins: "A conviction cannot be had ..." But of course, a conviction cannot be had at all outside of a court of law. From this we may infer that the "testimony" that must be corroborated is that which is adduced "through live witnesses speaking under oath or affirmation in presence of tribunal[.]" *Black's Law Dictionary,* supra. That such "testimony" must be corroborated by *"other* evidence" serves to strengthen this inference—that is, unless we are to assume the word "evidence" here is also to be given the "broadest possible understanding," to encompass more than just "matter submitted in court to determine the truth of alleged facts." *The New Merriam–Webster Dictionary,* supra at 261. But there is about as much chance the Legislature intended a more expansive definition of "evidence" as that by "conviction" it meant "strong belief." Clearly, in context, the "other evidence" referred to in Article 38.14 is "evidence" adduced "in presence of tribunal." So, too, do we construe the "testimony" contemplated by Article 38.14 to be of the narrower, evidentiary kind, the kind adduced in open court by live witnesses under oath.

### *AMBIGUITY*

■ But let us assume, for the sake of argument, that the meaning of "testimony" is not as plain, even in context, as it appears to us to be. We would then have to admit that the statute is ambiguous; that it lends itself to "being understood in more than one way." *The New Merriam–Webster Dictionary,* supra, at 40. In that event we would be authorized, under the Court's statutory construction analysis in *Boykin,* to consult *"extra textual factors"* to resolve the ambiguity. 818 S.W.2d at 785. Such factors include the "object sought to be attained;" "legislative history;" and the "common law[.]" V.T.C.A. Government Code, § 311.023, subsections (1), (3) & (4), respectively. The State Prosecuting Attorney persuasively argues that these factors militate in favor of the more narrow, and more common, understanding of "testimony."

■ The State Prosecuting Attorney directs us to Wigmore's treatise on evidence. Discussing the common-law rule that accom-

plice witnesses should be corroborated, Wigmore explained the policy behind the rule as follows:

> "The reasons which have led to this distrust of an accomplice's testimony are not far to seek. He may expect to save himself from punishment by procuring the conviction of others. It is true that he is also charging himself, and in that respect he has burned his ships. But he can escape the consequences of this acknowledgment, if the prosecuting authorities choose to release him, provided he helps them to secure the conviction of his partner in crime[.] * * * It is true that this promise of immunity or leniency is usually denied, and may not exist; but its existence is always suspected. *The essential element, however, it must be remembered, is this supposed promise or expectation of conditional clemency. If that is lacking, the whole basis of distrust fails. We have passed beyond the stage of thought in which his commission of crime, self-confessed, is deemed to render him radically a liar. The extreme case of the wretch who fabricates merely for the malicious desire to drag others down in his own ruin can be no foundation for a general rule.*"

7 Wigmore, Evidence § 2057 (Chadbourn rev. 1978), at 417 (emphasis supplied). It is only when the accomplice takes the witness stand that the "supposed promise or expectation of conditional clemency" that justifies the rule becomes apparent. The danger that an accomplice may "fabricate" in any other context than in open court is simply not great enough to invoke application of the rule, because the self-interest is not so manifest.

■ Moreover, as noted in the dissenting opinion on original submission, slip op. at 4–5, an accomplice's out-of-court statement is objectionable unless made under circumstances sufficiently indicative of reliability that it may be admitted as an exception to the hearsay rule. In the context of this case that means that the out-of-court statements of Tammy Bingham were admissible, if at all, only as statements against penal interest, a hearsay exception that is subject to a corroboration requirement of its own, albeit different in character from the corroboration Arti-

cle 38.14 requires. See Tex.R.Cr.Evid., Rule 803(24); *Davis v. State,* 872 S.W.2d 743, 749 (Tex.Cr.App.1994) ("the evidence of corroborating circumstances must *clearly* indicate trustworthiness."); *Cofield v. State,* 891 S.W.2d 952 (Tex.Cr.App.1994) (accomplice's out-of-court statement may be admissible under Rule 803(24), even to the extent it also inculpates accused, given sufficient corroborating circumstances). Bearing in mind this independent requirement of reliability of out-of-court accomplice statements, together with the reduced aura of self-interest that surrounds them, we have every reason to believe that the Legislature simply did not regard such statements with the same degree of suspicion as it did an accomplice witness who testifies in court. By this reckoning, we but effectuate the legislative intent when we read Article 38.14 to embrace only the in-court "testimony" of an accomplice.

### ABSURDITY

In the view of both the court of appeals below, and the concurring opinion on original submission, the Legislature could not possibly have meant for Article 38.14 to be construed as we have done today. The court of appeals complained that to insulate an out-of-court accomplice statement from the corroboration requirement "permits the State to do indirectly that which it cannot do directly." *Bingham v. State,* 833 S.W.2d 538 at 544 (Tex.App.1992). For essentially the same reason Judge Baird believes that our present construction of the statute is "absurd." Slip op. at 3–4.

■ The same extratextual considerations that resolve any ambiguity in use of the word "testimony" also make it apparent, however, that to read Article 38.14 to require corroboration only of in-court testimony of an accomplice witness does not reap "absurd" results. Absent the accomplice's personal presence and imprimatur in a court of law, the "supposed promise or expectation of conditional clemency" that Wigmore assures us is "essential" to justify the rule is lacking. There is nothing inherently absurd in failing to require corroboration under these circumstances. It is even less absurd when we

consider that other evidentiary rules ensure some circumstantial guarantee of reliability before an out-of-court statement of an accomplice will withstand objection. The Supreme Court of California has construed a nearly identical provision of its statutory law just as we construe our own Article 38.14 today, without any apparent concern for "absurd results." See *People v. Sully*, 53 Cal.3d 1195, 1230, 283 Cal.Rptr. 144, 164, 812 P.2d 163, 183 (1991) ("The usual problem with accomplice testimony—that it is consciously self-interested and calculated—is not present in an out-of-court statement that is itself sufficiently reliable to be allowed in evidence."). Construing a statute according to its plain import is not "absurd" merely because members of this Court do not favor that construction. We do not believe that our narrow, contextual interpretation of Article 38.14 is remotely absurd.

### PRIOR PRECEDENT

In his concurring opinion on original submission Judge Baird also cited two opinions from this Court for the proposition that out-of-court statements from an accomplice witness must be corroborated under Article 38.14. See *Wilson v. State*, 94 Tex.Cr.R. 348, 250 S.W. 1033 (1923) and *Goodwin v. State*, 165 Tex.Cr.R. 375, 307 S.W.2d 264 (1957). The State Prosecuting Attorney argues that we should not consider ourselves bound by these opinions. "Neither of those cases held that a jury instruction relating to corroboration of accomplice testimony was required when a third party testifies to an out-of-court declaration by an accomplice. Instead, in both cases it was held that an out-of-court declaration of an accomplice was not sufficient to corroborate accomplice testimony." State Prosecuting Attorney's Motion for Rehearing, at 16. Still, in *Wilson*, at least, the reason the accomplice's out-of-court statement would not corroborate an in-court accomplice's testimony is that "one accomplice cannot corroborate another[.]" 94 Tex.Cr.R. at 353, 250 S.W. at 1035. It seems, then, that *Wilson* at least inferentially supports the proposition that out-of-court accomplice statements must be corroborated under the statute. *Goodwin* can be read to support the same inference, albeit in dicta. If that is the

law, then presumably the trial court was obliged to instruct the jury to that effect, pursuant to Article 36.14, V.A.C.C.P.

Thus, there is some minimal force to Judge Baird's contention that our decision in this cause is constrained by the doctrine of *stare decisis*. Indeed, the United States Supreme Court has recently reiterated that "[r]espect for precedent is strongest in the area of statutory construction, where Congress is free to change the Court's interpretation of its legislation." *Hubbard v. United States*, 514 U.S. ——, at ——, 115 S.Ct. 1754, at 1763, 131 L.Ed.2d 779, at 792 (1995) (internal quotes omitted). However, neither *Wilson* nor *Goodwin* expressly *holds* that out-of-court statements of accomplices must be corroborated under the terms of the statute. The parties did not allude to these cases either on direct appeal or on original submission before this Court. The court of appeals did not cite them in support of its judgment. That no one has yet cited these cases is no surprise, for neither has ever been relied upon for the proposition that Judge Baird now cites them for. A quick check reveals that Shepard's Texas Citations lists a combined total of five later case citations for *Wilson* and *Goodwin*, only one of which relates to the issue at hand.

That case, *Stovall v. State*, 104 Tex.Cr.R. 210, 283 S.W. 850 (1926) (Opinion on rehearing), expressly rejected the argument that *Wilson* can be read to require a jury instruction that an accomplice's out-of-court statement must be corroborated, and cannot be used to corroborate another accomplice. See *id.*, 104 Tex.Cr.R. at 224, 283 S.W. at 856 ("In [*Wilson* ] we were discussing sufficiency of the evidence and not the propriety of an instruction. * * * If appellant's contention were sound, then in every case where one conspirator was called by the state as a witness, and the acts or declarations of other conspirators were proved by parties not connected with the crime, and these acts and declarations supported the testimony of the conspirator, who had given his evidence, a charge similar to that sought by appellant in the instant case would be demanded. We

think this is unsound and would be extending the rule regarding a charge upon accomplice testimony too far."). Indeed, because it specifically involved the question of the necessity of a jury instruction, *Stovall* would seem closer on point than *Wilson* or *Goodwin.* The best that can be said, therefore, is that the caselaw is hopelessly in conflict. Given this conflict, *Wilson* and *Goodwin* cannot, and indeed have not, generated "significant reliance interests." See *Hubbard,* supra, —— U.S. at ——, 115 S.Ct. at 1764, 131 L.Ed.2d at 793–94. Their status as binding precedent, at least for the proposition Judge Baird cites them for, is very much in doubt.

More importantly, neither *Wilson* nor *Goodwin* (nor, for that matter, *Stovall* ) undertook any analysis of the statutory language, as we have done today. Instead, in both *Wilson* and *Goodwin* the Court seems to have assumed, without ever squarely addressing the question, that when Article 38.14 (actually, its antecedents) required corroboration of the "testimony" of an accomplice, it meant not just in-court testimony, but extrajudicial statements as well. For reasons already given, we do not think the plain language of the statute bears out such an interpretation. Moreover, as we have shown, such an interpretation is at odds with the rational underpinnings of the common-law rule, from which the statute derived. We therefore accept the State Prosecuting Attorney's invitation to "disavow" *Wilson* and *Goodwin* to the extent that they conflict with our holding today. Having essentially fleshed out a rationale for the Court's *ipse dixit* in *Stovall,* we will follow it instead.

Accordingly, we hold that the court of appeals was mistaken to conclude that the trial court should have given an instruction to the jury that Tammy Bingham's out-of-court statement must be corroborated before the jury could rely on it for conviction. By the same token, the court of appeals erred to hold that the trial court should have instructed the jury that accomplice witnesses cannot corroborate one another. Because Tammy Bingham did not give "testimony" within the meaning of Article 38.14, it was *not* necessary for the jury "to scrutinize [her] out-of-court statements with the same suspicion as a testifying accomplice." 833 S.W.2d at 543. No such instructions were required.

The court of appeals' judgment is therefore reversed, and the cause is remanded to that court for disposition of appellant's remaining points of error.

MEYERS, J., dissents for the reasons stated in his opinion on original submission.

BAIRD, Judge, dissenting.

The majority's strained effort to reverse the judgment of the Court of Appeals results in the creation of three arcs which come together to form a perfect circle.

**I.**

The first arc is premised upon the untenable supposition that only in-court accomplice testimony need be corroborated because there is no chance that out-of-court accomplice statements are fabricated. *Ante,* 913 S.W.2d at 210–211. The majority provides no authority for this preposterous position because there is none. But, there is a wealth of authority holding just the opposite.

In-court statements are presumptively more reliable than out-of-court statements. Out-of-court statements have many dangers, e.g. the declarant might be lying, or might have misperceived the events which she relates or might have faulty memory, or her words might have been misunderstood or taken out of context by the listener. On the other hand, those dangers are minimized for in-court statements because the witness is under oath, aware of the gravity of the proceedings and subject to the pains and penalties of a perjury prosecution if the witness testifies falsely, the jury has the ability to observe the witness' demeanor and the opposing party has the right of cross-examination. *See, Williamson v. U.S.,* —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), and cases cited therein, *and, Cofield v. State,* 891 S.W.2d 952 (Tex.Cr.App.1994). Consequently, the majority opinion is based upon a fundamentally flawed premise, namely that out-of-court statements are more reliable than in-court statements.

## II.

Perhaps because it recognizes the flaw in the first arc, the majority attempts to divert attention from its opinion by attacking me and the opinions in *Wilson v. State,* 250 S.W. 1033 (Tex.Cr.App.1923), and *Goodwin v. State,* 307 S.W.2d 264 (Tex.Cr.App.1957). The majority states: "[t]he parties did not allude to these cases either on direct appeal or on original submission before this Court." *Ante,* 913 S.W.2d at 212. And the majority notes the Court of Appeals did not cite either case. Personal attacks, while evidently in vogue, are out of place, especially when the judge is criticized for expending the effort to research a question of law pending before the Court.[1] In fact, a judge would be remiss in his duties if he relied *only* on the cases cited by the parties. We are bound by our own precedent even when such is not discovered by the parties or the lower courts.

Aside from the personal criticism, the majority fails to explain why there was no criticism of *Wilson* and *Goodwin* on December 21, 1994, when our original opinions were delivered. *Wilson* and *Goodwin* are not "hopelessly in conflict" with *Stovall v. State,* 283 S.W. 850 (Tex.Cr.App.1926) (Opinion on rehearing). *Ante,* 913 S.W.2d at 212–213. *Stovall* has no bearing on the instant issue.

Stovall was a county commissioner charged with accepting a bribe from Bibb. *Id.* 283 S.W. at 852. Green, an accomplice witness, testified about several conversations between Bibb and Stovall wherein Stovall agreed to accept Bibb's bribe. Bibb did not testify. The trial judge instructed the jury that Green was an accomplice witness whose testimony required corroboration. However, the trial judge did not provide a similar instruction with regard to Bibb's out-of-court statements. *Id.* 283 S.W. at 852–854. On appeal Stovall contended the jury should have been instructed that Bibb was an accomplice and that his acts or declarations could not corroborate Green's testimony. *Id.* 283 S.W. at 856. This Court disagreed, finding the facts in *Stovall distinguishable* from *Wilson* because Bibb's statements were made during the course of and in furtherance of the conspiracy. 283 S.W. at 856. Statements made by co-conspirators were then, and are now, admissible. *See,* Tex.R.Crim. Evid. 801(e)(2)(E). Therefore, *Stovall* is distinguishable and *Wilson* and *Goodwin* control the instant case.[2] Consequently, the second arc of the majority opinion fails.

## III.

With the foregoing in mind, let me turn to the third arc which is the remanding of this case to the Court of Appeals.

On direct appeal, appellant contended the trial judge erred in admitting Tammy's out-of-court statements. The Court of Appeals did not address that point of error but will be forced to do so on remand. This point of error requires reversal because Tammy's statements were not admissible as statements against interest. In *Cofield v. State,* the State introduced the statements of Cofield's co-defendant. The Court of Appeals held the statements were inadmissible and we agreed. *Cofield v. State,* 857 S.W.2d 798, 805 (Tex.App.—Corpus Christi 1993), *and,* 891 S.W.2d 952 (Tex.Cr.App.1994). In such situations, statements against interests are admissible only if the declarant is the defendant on trial. They are *not* admissible at the trial of a co-defendant or accomplice. *Id.* 891 S.W.2d at 956. So Tammy's statements were not admissible under Tex.R.Crim.Evid. 803(24).

However, an accomplice's out-of-court statements may be admissible if made in furtherance of a conspiracy. *See,* Tex. R.Crim.Evid. 801(e)(2)(E). "Where there is sufficient independent evidence to establish a

---

1. This criticism is strange coming from Judge Clinton who cited the "Greater Austin Telephone Directory" in *Richardson v. State,* 865 S.W.2d 944, 953, n. 8 (Tex.Cr.App.1993). That source was not relied upon by either of the parties or the Amarillo Court of Appeals.

2. The majority is critical of *Wilson* and *Goodwin* because they do not "expressly hold" that out-of-court statements of accomplices must be corroborated. *Ante,* 913 S.W.2d at 212. This criticism is strange coming from Judge Clinton who, in *Crittenden v. State,* 899 S.W.2d 668, 672 (Tex.Cr. App.1995), did away with the pretext arrest doctrine on the basis of the "implicit" or "tacit" holdings in two unrelated cases.

conspiracy, hearsay acts and statements of a conspirator which are made during the course of and in furtherance of the conspiracy are admissible against another conspirator." *Denney v. State*, 558 S.W.2d 467, 469 (Tex.Cr.App.1977). But co-conspirator statements are not always admissible. In *Deeb v. State*, 815 S.W.2d 692 (Tex.Cr.App.1991), the trial judge admitted the statements of a co-conspirator, made while the co-conspirator was in jail after the termination of the conspiracy. We held such statements were inadmissible because they were not made "during the course of the conspiracy." *Id.* at 696. *See also, Ward v. State*, 657 S.W.2d 133 (Tex.Cr.App.1983). Similarly, Tammy's statements were not made during the course of or in furtherance of the conspiracy. Consequently, the trial court erred in admitting the statements.

So what the majority opinion stands for is that out-of-court statements of an accomplice do not require corroboration, but what the majority does not tell the reader is that such statements are not admissible. The result it that we are reversing the judgment of the court of appeals which reversed the judgment of the trial court, and we are remanding the case to the court of appeals knowing they will again reverse the trial court's judgment.

### IV.

The three arcs are now in place and we can see a perfect circle. Nothing has been accomplished. Our jurisprudence is not enriched and we appear as the cat chasing its tail. The majority's tortured logic and strain to affirm appellant's conviction is to no avail.

There is an old equitable maxim that equity will not require the doing of a useless thing, nor will it lend its powers to accomplish a useless purpose, nor will it grant a decree which does not confer any real benefit or effect any real relief. *Boman v. Gibbs*, 443 S.W.2d 267, 272 (Tex.App.—Amarillo 1969). Therefore, *even if* the majority's premise was not fundamentally flawed and *even if* there were no cases on point requiring a different result, we should follow the spirit of that maxim and dismiss this petition as improvidently granted. Instead, we do a

useless act and everyone here knows it. I can only throw up my hands in disgust.

For these reasons and those in my concurring opinion on original submission, I dissent.

OVERSTREET, J., joins this opinion.

MALONEY, J., joins part III of this opinion and otherwise dissents.