Opinion filed June 28,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00156-CR

                                                    __________

 

         LEONARD FOSTER
BATTS, JR. A/K/A BO BATTS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 35th District Court

 

                                                           Brown
County, Texas

 

                                                   Trial
Court Cause No. CR19114

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            The jury
convicted Leonard Foster Batts, Jr. a/k/a Bo Batts of engaging in organized
criminal activity and assessed his punishment at confinement for forty years. 
We affirm.  

            Appellant
has briefed seven points of error.  In his first point, appellant complains of
the admission of hearsay into evidence.  In his second point, appellant
contends that the testimony of the accomplice witnesses was not sufficiently
corroborated.  In the third, fourth, and fifth points, appellant challenges the
sufficiency of the evidence.  In his sixth and seventh points, appellant complains
of errors in the jury charge.  We will address the challenges to the
sufficiency of the evidence first.  

Sufficiency
of the Evidence

            In his third and fourth points, appellant contends that the
evidence was insufficient to prove that he delivered at least four grams of
methamphetamine to Cheryl McEwen.  In his fifth point of error, appellant
argues that the evidence was insufficient to prove that he acted in
“combination” with at least two other people.  We review a challenge to the sufficiency
of the evidence under the standard of review set forth in Jackson v.
Virginia, 443 U.S. 307 (1979).  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010); Polk v. State, 337 S.W.3d 286, 288–89 (Tex.
App.—Eastland 2010, pet. ref’d).  Under the Jackson standard, we
examine all of the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and any reasonable inferences from
it, any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Isassi v. State, 330 S.W.3d 633, 638 (Tex.
Crim. App. 2010).  

            Under Tex.
Penal Code Ann. § 71.02 (West Supp. 2011), a person commits the offense
of engaging in organized criminal activity “if, with the intent to establish,
maintain, or participate in a combination or in the profits of a combination .
. . , the person commits or conspires to commit” certain offenses, including
the “unlawful manufacture, delivery, dispensation, or distribution of a
controlled substance.”  A combination is defined as “three or more persons who
collaborate in carrying on criminal activities.”  Tex. Penal Code Ann. § 71.01(a) (West 2011).  The indictment in
this case alleged that appellant knowingly delivered, by actual or constructive
transfer to Cheryl McEwen, between four and 200 grams of methamphetamine on or
about October 19, 2006, and that appellant “did then and there commit said
offense with the intent to establish, maintain, or participate in a combination
or in the profits of a combination who collaborated in carrying on said
criminal activity.”  The jury charge contained the allegations from the
indictment and added Sherry Brock as a participant.

The record shows that appellant and Sherry Brock lived
together, were heavy metham-phetamine users, and sold methamphetamine to
support their drug habit.  Brock, who had been convicted of the same crime as
appellant but was already out on parole by the time appellant was tried, was
called by the State and testified at appellant’s trial.  According to Brock,
appellant bought drugs from John and Jesse Burks, with whom Brock was not
acquainted.  Brock testified that Cheryl McEwen was a customer who bought
methamphetamine and cocaine from Brock and appellant daily or every other day
for about a month or a month and a half (until Brock learned from McEwen that
Lieutenant Tony Aaron of the Brown County Sheriff’s Department was out “to get
them”).  During most of the transactions, appellant would hand the drugs to
Brock, and Brock would make the exchange, count the money, and then hand the
money to appellant.  Brock testified that she and appellant shared in the
proceeds of the drug sales.   McEwen sometimes purchased an ounce (twenty-eight
grams) of methamphetamine, sometimes less, at each transaction.  Based on her
dealings with McEwen, Brock believed that McEwen was a drug dealer.

McEwen, who was in prison serving a 39-year sentence, also
testified at appellant’s trial.  She testified similarly to Brock with respect
to her purchase of drugs, mostly methamphetamine but also some cocaine, from Brock
and appellant.  McEwen testified that she generally dealt directly with Brock
but that appellant was present at all of the transactions.  On one occasion,
McEwen actually dealt with appellant instead of Brock.  McEwen testified that
she generally purchased fourteen grams of methamphetamine at a time.  She quit
purchasing from Brock and appellant after her boyfriend, Clifton Thomas, was
arrested near her residence for possessing methamphetamine that he got from
McEwen.  When Thomas was arrested, he was in possession of 4.15 grams of
methamphetamine and a trace amount of cocaine.  The drugs seized from Thomas
were subsequently tested by the Abilene DPS Crime Lab, and both the lab report
and the drugs were admitted into evidence as exhibits at appellant’s trial.

As a result of Thomas’s arrest, Lieutenant Aaron went to
McEwen’s house and conducted a search with McEwen’s consent.  Seized from
inside McEwen’s house were trace amounts of methamphetamine; a 100-count
package of small, “zipper baggies”; a finger scale; a set of police “ten
codes”; a bowl scale with residue; a digital scale; more baggies, but even
smaller; a list of law enforcement frequencies; a list, written by Brock, of
meeting spots between Abilene and Lake Brownwood; and a methamphetamine pipe.  The
list of meeting spots was handwritten by Brock and given to McEwen in an effort
to be more “organized” so that they did not have to type as much when sending a
text message about where to meet for their transactions.  Lieutenant Aaron
also discovered text messages on McEwen’s phone from “Sherry and Bo.”  Lieutenant
Aaron sent a message through McEwen to appellant and Brock to quit bringing
drugs to Brownwood and to come talk to him because they were about to go to
prison.  Approximately two months later, Brock came in and gave a statement to
Lieutenant Aaron.  Lieutenant Aaron testified that he had obtained information
from various sources regarding appellant and Brock supplying narcotics.

McEwen and Brock verified that they sent text messages back
and forth on October 17, 18, 19, and 20, 2006, regarding appellant and Brock
coming to meet McEwen to deliver drugs.[1] 
A text message from October 17 at 1:08 a.m. read, “Bo is trying 2 cut out his
eyeball.  We wil b leavn here after I find him a pirate patch.”  In the
messages sent October 18 at 3:27 a.m. and 4:10 a.m., Brock indicated, “On our
way” and “I c lake lites.”  At that time, appellant and Brock lived in Abilene,
and McEwen lived at Lake Brownwood.  McEwen testified that appellant and Brock
delivered methamphetamine to her house on October 18.  She also stated that,
for them to make a delivery at her house, the minimum purchase was fourteen
grams of methamphetamine.  In repetitive text messages sent on the night of
October 19 and after midnight on October 20 to McEwen, Brock stated, “U awake?
We r ready 2 ride.”  However, the delivery that was to be made that night was
aborted due to Thomas being stopped and arrested and the police going to
McEwen’s house.  The testimony reflects that appellant and Brock made
deliveries to McEwen at various places, which included her house, along the
road between Brownwood and Abilene, and also in Abilene.  The evidence
indicates that the amount of methamphetamine sold to McEwen in each delivery
was not a “user” amount but, rather, a “dealer” amount.

After reviewing all of the evidence in the light most
favorable to the verdict, we conclude that a rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  The
jury could have found that appellant committed the offense of unlawful delivery
of a controlled substance by delivering more than four grams of methamphetamine
to McEwen on or about October 19 and that, in doing so, appellant acted with
the intent to participate in a “combination” or in the profits of a
“combination” with Brock and McEwen to carry on criminal activities: the delivery
of a controlled substance, namely methamphetamine.  The testimony of Brock and
McEwen, as corroborated by text messages, reflects that appellant and Brock
delivered at least fourteen grams of methamphetamine to McEwen on October 18. 
The evidence also shows that the criminal act was not an isolated incident but,
rather, a continuing course of conduct and that appellant had the intent to
participate in the combination or the profits thereof.  See Hart v. State,
89 S.W.3d 61, 63–64 (Tex. Crim. App. 2002).  Pursuant to Section 71.01(a)(3),
participants in a combination of three or more persons collaborating to carry
on criminal activities “may stand in a wholesaler-retailer or other
arm’s-length relationship in illicit distribution operations.”  We hold that the
evidence is sufficient to support appellant’s conviction for engaging in
organized criminal activity.  Appellant’s third, fourth, and fifth
points of error are overruled. 

Corroboration
of Accomplice Witnesses

Appellant urges in his second point of error that the
evidence is insufficient because the testimony of the accomplices was not
corroborated by other evidence tending to connect appellant to the offense.  In
order to support a conviction based upon the testimony of an accomplice, there
must be corroborating evidence that tends to connect the accused with the
offense.  Tex. Code Crim. Proc. Ann.
art. 38.14 (West 2005); Reed v. State, 744 S.W.2d 112 (Tex. Crim. App.
1988).  To determine the sufficiency of the corroboration, we must examine the
testimony of the non‑accomplice witnesses and determine if there is
inculpatory evidence “tending to connect” appellant to the crime.  Reed,
744 S.W.2d at 127.  An accomplice witness need not be corroborated in all his
testimony, and the corroboration need not directly link the accused to the
crime or be sufficient in itself to establish guilt.  Id.  When there
are conflicting views of the non-accomplice evidence—one that tends to connect
the accused to the offense and one that does not—we must defer to the
factfinder’s resolution of the evidence.  Smith v. State, 332 S.W.3d
425, 442 (Tex. Crim. App. 2011).  

In
this case, the accomplice testimony was corroborated by the testimony of Kaynelle
Cassel that she received methamphetamine from appellant and Brock in a similar
fashion as described by McEwen, the testimony of Lieutenant Aaron that he “had
a wealth of information” from various sources about Brock and appellant
supplying narcotics, and evidence of the text messages on McEwen’s phone. 
There were messages sent to McEwen from “Sherry and Bo” on October 17, 18, 19,
and 20 indicating that Brock and appellant were making trips to meet with
McEwen in the middle of the night.  We hold that the record contains inculpatory
non-accomplice evidence tending to connect appellant to the crime.  Appellant’s
second point of error is overruled.




 

Admission
of Hearsay into Evidence

In
appellant’s first point, he complains of the admission into evidence of an
out-of-court statement made by Thomas to police after Thomas was arrested.  The
record shows that the State, aware that Thomas had no desire to testify at
appellant’s trial, called Thomas as a witness in order to get his statement
admitted into evidence.  The trial court addressed the issue outside the
presence of the jury.  Each sentence of Thomas’s statement was addressed at the
hearing.  Portions of the statement were redacted, but objectionable parts
remained in the exhibit admitted at trial.  The redacted statement, with errors
shown as in the exhibit, reads:

I got out of TDCJ two
months ago in August.  I have known Cheryl Cogburn [McEwen] from knowing he
husband Wayne Cogburn.  Before I went to prison I use to get drugs from
Cheryl.  This last time I met up with her she was living in Shamrock Shores in
Leo’s house.  This is when I started using again and have been using a gram a
day.  I have used with Cheryl.  We both use syringes.  At first I did not know
at first who she was getting her methamphetamine from but it did not take
long.  I have been living with Cheryl.  I met Bo and Sherry for about a month. 
I met them through Cheryl.  Most of the time Cheryl would get one ounce of
methamphetamine but the most I have seen her get was two ounce and this was on
a trip that we met them on the road to Abilene.  Cheryl had a list of spots
that she would met Sherry and Bo.  I have been all the way to Abilene to there
house.  Cheryl usually meets with them once a day in the early morning hours. 
They will bring one ounce of methamphetamine and a quarter ounce of cocaine
every day and have done so the whole month that I have known them.  Sherry and
Bo are charging $1300.00 to $1200.00 an ounce of methamphetamine.  I’m not sure
what the quarter ounce of cocaine.  The transactions of money and drugs
occurred between Cheryl and Sherry.  The night I got arrested I came back to
the house and I got a gram and I bought one gram for some friends and she gave
me what she said was 2.5 grams just so I did not have drive back and forth to
her house.  Last night Bo and Sherry called or text messages Cheryl and said
they were on there way.  I did not know where they were going to meet because I
was going back to Rising Star. 

We
review the decision to admit evidence under an abuse of discretion standard and
will not reverse that decision absent a clear abuse of discretion.  McCarty
v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).  As the proponent of
the evidence, the State had the burden to establish that a hearsay exception
applied.  Taylor v. State, 268 S.W.3d 571, 578–79 (Tex. Crim. App.
2008).  The State asserted that Thomas’s statement was admissible as an
exception to the hearsay rule because it was a statement against penal interest
under Tex. R. Evid. 803(24) and a
recorded recolection under Tex. R. Evid.
803(5).

Under
Rule 803(24), statements against penal interest are admissible as an exception
to the hearsay rule if the statement tended to subject the declarant to
criminal liability such that a reasonable person in the declarant’s position
would not have made the statement unless he believed it to be true and, in
criminal cases, if corroborating circumstances clearly indicate the
trustworthiness of the statement.  See Cofield v. State, 891 S.W.2d 952,
944–56 (Tex. Crim. App. 1994).  The Court of Criminal Appeals has held: “Both
statements that are directly against the declarant’s interest and collateral
‘blame-sharing’ statements may be admissible under Rule 803(24), if
corroborating circumstances clearly indicate their trustworthiness.  ‘Blame-shifting’
statements that minimize the speaker’s culpability are not, absent
extraordinary circumstances, admissible under the rule.”  Walter v. State,
267 S.W.3d 883, 896 (Tex. Crim. App. 2008) (footnote omitted).  A trial judge is obligated to parse a generally
self-inculpatory narrative and weed out those specific factual statements that
are self-exculpatory or shift blame to another.  Id. at 897.  Although
Thomas’s statement as redacted included direct statements against Thomas’s
interest and blame-sharing statements that were admissible under the rule, it
also included numerous blame-shifting statements that should not have been
admitted at appellant’s trial.  Following the approach formally adopted by the
court in Walter with respect to Rule 803(24) and the holding in Walter,
we hold that the trial court erred in admitting those particular statements
that shifted blame to others.  See id. at 896, 900.  

We
also hold that Thomas’s statement was not admissible under Rule 803(5), which
provides that the following is not excluded by the hearsay rule: 

Recorded Recollection. 
A memorandum or record concerning a matter about which a witness once had
personal knowledge but now has insufficient recollection to enable the witness
to testify fully and accurately, shown to have been made or adopted by the
witness when the matter was fresh in the witness’ memory and to reflect that
knowledge correctly, unless the circumstances of preparation cast doubt on the
document’s trustworthiness.  If admitted, the memorandum or record may be read
into evidence but may not itself be received as an exhibit unless offered by an
adverse party.

To satisfy Rule
803(5), four elements must be met: (1) the witness must have had firsthand
knowledge of the event, (2) the written statement must be an original
memorandum made at or near the time of the event while the witness had a clear
and accurate memory of it, (3) the witness must lack a present recollection of
the event, and (4) the witness must vouch at trial for the accuracy of the
written statement.  Johnson v. State, 967 S.W.2d 410, 416 (Tex. Crim.
App. 1998).  The facts of this case are similar to those in Johnson,
wherein the surviving victim gave a written statement to police shortly after
the crime but was uncooperative when called to testify at trial.  In Johnson,
the witness’s statement was read into evidence as a recorded recollection after
the witness testified that he did not remember anything about the incident or
his statement.  Id. at 414–16.  The witness identified his signature on
the statement and acquiesced when the State asserted that the facts were “more
fresh in [his] mind” when he gave the statement to the police.  Id. at
415.  The court held that the State did not satisfy the first and fourth
elements required to lay a proper predicate under Rule 803(5) because the
witness did not testify that he was present during the offense and because the
witness did not guarantee that his memory was correctly transcribed or that the
factual assertions contained in the statement were true.  Id. at 417.

In
the present case, Thomas testified that he signed the statement, but he did not
testify at trial that he had firsthand knowledge of the events contained in his
statement.  Nor did he vouch at trial for the accuracy of his statement. 
Instead, Thomas testified that reading the statement did not refresh his
recollection, that he could not recall what was true and what was not, that he
vaguely remembered the day of his arrest, that he vaguely remembered talking to
Lieutenant Aaron, that Lieutenant Aaron typed the statement after
“throwing stuff out there” and “dragging out of me what he wanted said,” that he
had been up for days or weeks and was still high when he gave the statement,
that he did not know what he was signing, and that he could not testify that
what was written in the statement was true.  When specifically asked if the
information in his statement was “true,” Thomas testified, “Some of it could
and some of it is not.”  When asked later whether Lieutenant Aaron had just
“made up” what was written in the statement, Thomas testified, “Some of that is
probably true and some of it, I don’t know about.”  Thomas testified that he
could not recall which portions were true.  The requirements of Rule 803(5)
were not met in this case.[2] 
Therefore, Thomas’s statement was not admissible as a recorded recollection.

Because
the statement was not admissible under Rule 803(5) and because only portions of
Thomas’s statement were admissible under Rule 803(24), we hold that the trial
court abused its discretion in admitting the inadmissible, blame-shifting
portions of Thomas’s statement into evidence.  Having determined that the trial
court erred, we must now determine whether the error is reversible under Tex. R. App. P. 44.2(b), which applies
to nonconstitutional errors.  Pursuant to Rule 44.2(b), an error is not
reversible error unless it affects a substantial right of the defendant.  A
substantial right is affected when the error has a substantial and injurious
effect or influence in determining the jury’s verdict.  Johnson v. State,
43 S.W.3d 1, 4 (Tex. Crim. App. 2001); King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997).  When conducting a Rule 44.2(b) harm analysis based
upon the erroneous admission of evidence, an appellate court should consider
everything in the record, including “any testimony or physical evidence
admitted for the jury’s consideration, the nature of the evidence supporting
the verdict, the character of the alleged error and how it might be considered
in connection with other evidence in the case, the jury instructions, the
State’s theory and any defensive theories, closing arguments, voir dire, and whether
the State emphasized the error.”  Rich v. State, 160 S.W.3d 575, 577–78
(Tex. Crim. App. 2005).

The
record shows that the blame-shifting portions of Thomas’s statement, which is
set forth in full above, were largely repetitive of the testimony of McEwen and
Brock and were also repetitive of other testimony and evidence regarding
Thomas’s arrest and possession of methamphetamine, of Lieutenant Aaron’s
testimony, and of other evidence regarding the meeting places and the text
messages.  Although some of the objectionable portions of Thomas’s statement
were mentioned briefly in the State’s closing argument, the record shows that
the State, in three paragraphs, was merely attempting to show that Thomas’s
statement was corroborated by other non-accomplice testimony or evidence.  In
its charge, the trial court had instructed the jury that Thomas, McEwen, and
Brock were accomplices and had given an accomplice witness instruction with
respect to their testimony.  Considering everything in the record, we cannot hold
under the circumstances in this case that the erroneously admitted por-tions of
Thomas’s statement had a substantial or injurious effect or influence upon the
jury’s determination of the verdict.  Appellant’s first point of error is
overruled.

Jury
Charge

In
his final two points, appellant complains of errors in the jury charge.  In the
sixth point of error, appellant urges that the trial court’s charge on
circumstantial evidence violated Tex.
Code Crim. Proc. Ann. art. 36.14 (West 2007) because it was a comment on
the weight of the evidence.  In its charge to the jury, the trial court
informed the jury that McEwen, Brock, and Thomas were accomplices and gave an
accomplice witness instruction that incorporated the provisions of Article
38.14.  The trial court then instructed the jurors: “Circumstantial evidence
can corroborate the testimony of an accomplice witness.”  This language, though
not contained in Article 38.14 or elsewhere in the statutes, is a correct
statement of the law because corroborating evidence may be either direct or
circumstantial.  See Smith, 332 S.W.3d at 442; Brown v. State, 672
S.W.2d 487, 488 (Tex. Crim. App. 1984).  The instruction is also neutral and
does not pluck out any specific piece of evidence; however, it does single out
a certain type of evidence­—circumstantial evidence—and does focus the jury’s
attention on that type of evidence as corroboration for accomplice testimony.  See
Brown v. State, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003).  In Brown,
the court addressed the propriety of instructing the jury that “intent or
knowledge may be inferred by acts done or words spoken.”  Id. at 801.  The
court noted that the instruction was neutral and that it was a judicial review
device for assessing the sufficiency of the evidence, but the court held that
the instruction was “marginally” an improper comment and that the trial court
erred in including it in the jury charge.  Id. at 802–03.  Following the
reasoning and the analysis of the court in Brown, we hold that the trial
court erred by instructing the jury that “[c]ircumstantial evidence can
corroborate the testimony of an accomplice witness.”  

Appellant
concedes that he did not object at trial to the inclusion of this instruction
in the jury charge or otherwise bring the error to the attention of the trial
court.  When a defendant fails to object at trial to an error in the jury
charge, he is entitled to a reversal only if that error results in “egregious
harm.”  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); see
Tex. Code Crim. Proc. Ann. art.
36.19 (West 2006).  The Brown court addressed whether the instruction in
that case, to which the defendant had objected, caused “some harm” and held
that it was “not, in any sense, harmful.” 122 S.W.3d at 803.  As in Brown,
the instruction in this case was mild, neutral, and an obvious common-sense
proposition.  See id.  We have reviewed the entire jury charge, the
evidence, the arguments of counsel, and other relevant information as required
by Almanza, and we conclude that the error was not so egregious as to
deny appellant a fair and impartial trial.  Appellant’s sixth point of error is
overruled.  

            In
his final point, appellant argues that the trial court erred in overruling his
objection to the accomplice witness instruction in the jury charge.  The trial
court instructed the jury as follows:

            The witnesses, Cheryl McEwen,
Sherry Brock, and Clifton Thomas, are accomplices, if an offense was committed,
and you cannot convict the defendant upon his or her testimony unless you first
believe that his or her testimony is true and shows that the defendant is
guilty as charged, and then you cannot convict the defendant upon said
testimony unless you further believe that there is other testimony or
evidence in the case, outside of the testimony of Cheryl McEwen,
Sherry Brock, and Clifton Thomas tending to connect the defendant with the
offense committed, if you find that an offense was committed, and the
corroboration is not sufficient if it merely shows the commission of the
offense, but it must also tend to connect the defendant with its commission, and
then from all of the evidence you must believe beyond a reasonable doubt that
the defendant is guilty of the offense charged against him (emphasis added). 

Appellant
objected and requested an instruction similar to the one given, with the main
differences being (1) the omission of the above-italicized “or evidence” and
(2) the replacement of the above-italicized “testimony” with the word
“evidence.”  Appellant’s requested instruction tracked the language of an
instruction taken from a footnote in Munoz v. State, 853 S.W.2d 558, 560
n.4 (Tex. Crim. App. 1993).  The jury instruction was not at issue in Munoz. 
During its discussion of the sufficiency of the corroborating evidence, the
Court of Criminal Appeals merely noted the accomplice witness instruction that
had been given by the trial court.  Munoz, 853 S.W.2d at 559–64, 560
n.4.  

The
instruction given by the trial court in this case more closely tracks the
language of the applicable statute than did appellant’s requested instruction. 
The Code of Criminal Procedure provides: “A conviction cannot be had upon the testimony
of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.”  Article 38.14
(emphasis added).  Furthermore, the instruction requested by appellant
inappropriately requires that there be corroborating “testimony,” whereas
Article 38.14 requires only that there be corroborating “evidence.”  In the
context of Article 38.14, the term “evidence” encompasses exhibits and,
therefore, does not equate to “testimony.”  Bingham v. State, 913 S.W.2d
208, 210 (Tex. Crim. App. 1995).

Appellant
argues that the trial court’s instruction was confusing because it permitted
the jury to consider Thomas’s written statement as evidence without requiring
that it be corroborated and because it allowed an accomplice (through Thomas’s
statement) to corroborate other accomplices.  In Bingham, the Court of
Criminal Appeals determined that an out-of-court statement made by an
accomplice need not be corroborated and that only the in-court testimony of an
accomplice must be corroborated.  913 S.W.2d at 211–13.  We agree with
appellant that the facts of Bingham are distinguishable because the
accomplice did not testify in that case; however, we do not believe that
distinction to be controlling.  The court in Bingham noted the inherent
reliability of an accomplice’s out-of-court statement when it falls within an
exception to the hearsay rule,[3]
stated the court’s belief that the legislature “did not regard such statements
with the same degree of suspicion as it did an accomplice witness who testifies
in court,” and effectuated legislative intent by “read[ing] Article 38.14 to
embrace only the in-court ‘testimony’ of an accomplice.”  Id. at 211.  Based
upon the specific use of the term “testimony” in Article 38.14 and the court’s opinion
in Bingham, it seems clear that only the in-court testimony of an
accomplice must be corroborated.  See Archie v. State, 340 S.W.3d 734,
737 n.3 (Tex. Crim. App. 2011) (citing Bingham and stating that the
testifying accomplice’s “out-of-court statement did not itself have to
be corroborated under Article 38.14”).[4]
 Because the instruction given by the trial court in this case generally
tracked Article 38.14, because appellant’s requested instruction was in part
improper, and because only the in-court testimony of an accomplice need be
corroborated, we hold that it was not error for the trial court to overrule
appellant’s objection or to refuse to give appellant’s requested instruction. 
Appellant’s seventh point of error is overruled.  

The
judgment of the trial court is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

June 28, 2012

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J. 









[1]We note that McEwen’s phone did not contain
any text messages dated prior to October 17. 

 





[2]We note also that, instead of being read into evidence
as permitted by Rule 803(5), Thomas’s redacted statement was admitted into
evidence as an exhibit.





[3]We note, as discussed above, that some portions of
Thomas’s out-of-court statement were properly admitted but that other portions
were erroneously admitted.  The inadmissibility of portions of that statement,
however, does not affect the propriety of the jury charge. 

 





[4]We note that an accomplice’s prior out-of-court
statements may not be used to corroborate his testimony for purposes of Article
38.14.  Archie, 340 S.W.3d at 737 n.3; Smith, 332 S.W.3d at 439.