**Affirmed as Modified and Opinion Filed December 12, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01374-CR
No. 05-12-01375-CR

**JOHN BRANDON WHITNEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 380-82172-2011 and 380-82173-2011**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Fillmore
Opinion by Justice Francis

A jury convicted John Brandon Whitney of two aggravated robberies and assessed punishment at concurrent prison terms of twenty-eight years. In two issues, appellant contends the evidence is insufficient to corroborate the testimony of the accomplice witnesses and the trial court improperly admitted hearsay testimony. We affirm.

On the night of June 29, 2011, Toshihisa Murata was helping his friend, Yen-Chen Lin, move into a house in Plano not far from U.S. 75. They finished moving at about 1:20 a.m. and were standing in the front yard when a gold Chevrolet SUV stopped in the middle of the street. Three people, two men and a pink-haired woman, got out of the car. The men ran at Murata and Lin, demanded their money, and attacked them with a hammer-type weapon and a metal rod. The female stood to the side, tapping a metal rod in her hand. Murata said he was hit in the back

of the head twice with the hammer and he could see that Lin was being attacked with a metal rod. Murata gave his assailant his wallet but refused to give him his cell phone. The group ran back to the vehicle and "took off." Murata immediately called 911. At trial, he said he could not identify his assailants.

Plano police officer Christopher McEntire heard the robbery call and began to monitor southbound U.S. 75. He saw a gold-colored Chevrolet Blazer with multiple occupants pass by. McEntire turned on his emergency lights to initiate a stop and then trained a spotlight on the rear of the vehicle and could see that one of the occupants had "hot pink" hair. The Blazer sped up, and a high-speed chase ensued. During the chase, McEntire saw items being thrown from the window of the vehicle, and notified other officers so that they could recover them. The Blazer exited the highway, turned onto a divided street, and drove in the opposing lanes of traffic. At that point, McEntire discontinued the chase for safety reasons, but he obtained the license plate number of the vehicle. Police recovered the items thrown from the car; they were Murata's wallet and its contents, including credit cards.

Plano police released a bulletin for the Chevrolet Blazer and, eight days after the robberies, were contacted by a York, Nebraska police officer, Sgt. Michael Hanke, who advised that he had located the vehicle. Hanke testified he was dispatched to a call that a "group of kids" in an SUV were harassing customers at Walmart for money and cigarettes. When Hanke arrived, appellant got out of the driver's seat and identified himself as John Swanson. He told Hanke he did not have identification because he had been robbed. Hanke gave appellant permission to go into the store to use the restroom, and appellant did not return. Hanke, however, was able to detain two other occupants, Joshua Savage and Tiffany Lee, and appellant was eventually arrested and returned to Texas. Hanke recovered a mallet and metal rods from the vehicle, and Murata testified they were "most likely" the weapons used in the attack.

At trial, Savage's sister, Candice Sussan, testified that on the day of the robbery, she was hanging out at a motel in Plano with her brother and a group of friends that included appellant, Lee, Megan Kerkove, Preston Sheffield, and Jessica Rogers. At some point, everyone left but her and Rogers. Hours later, early in the morning, Sussan's father brought Savage and Kerkove back to the motel. Her brother was "talking a lot" and told her "they had gone out and hit some licks," meaning they "had robbed some people." By "they," Sussan said he meant him, Kerkove, appellant, and Lee.

Later that morning, the group met up at appellant's apartment. Although appellant did not talk about the robberies, Sussan said he threatened anyone who said anything about what had happened the night before. Sussan said she took appellant seriously. The group decided to leave town and left in Sheffield's SUV. They stayed in New Mexico for a few days. When the group got ready to move on, Sussan stayed behind.

Kerkove and Savage also testified. Savage had already been convicted in these cases and had been sentenced to ten years in prison; Kerkove was given deferred adjudication probation. Kerkove testified she was at a motel in Plano when a group of them, including appellant, left in Sheffield's vehicle to get gas. Appellant was driving. On the way, appellant stopped the vehicle in front of a house, and he and Savage jumped out, attacked two people with a mallet and metal rod, and returned to the vehicle with a wallet. Savage handed the wallet to her and told her to go through it. Kerkove's fingerprints were later found on the credit cards. During the police chase, she said Savage threw the wallet out of the window. Later, appellant told them not to tell anybody what had happened, warning that "[s]nitches end up in ditches." She took the threat seriously.

Savage testified he had taken "a lot of pills" on the night of the robberies and could not remember the details. He said he was with Sheffield, Lee, Kerkove, and appellant in Sheffield's

SUV.  Savage said he and Lee, who had pink hair at the time, got out of the vehicle.  Savage said he was holding a rebar pipe when he demanded one of the men give him his wallet and phone.  After the robbery, the group stopped at a gas station, and appellant told Savage to use one of the victims' credit cards to pay.  Savage denied any "recollection" of seeing appellant outside the SUV during the robbery, nor did he remember seeing appellant with a mallet or see him hit anyone with a mallet.  He acknowledged that in previous statements to the police, he said appellant participated in the robbery and was the person who attacked one of the people with a mallet.

Finally, Sussan and Savage's father, Harold Savage, testified that on the night of the robbery, he received a call from his son at about 2 or 2:30 in the morning.  He could hear appellant's voice in the background.  His son told him that he and Kerkove needed a ride back to the motel so Harold Savage picked them up and took them to the motel.

In his second issue, appellant contends the evidence is legally insufficient to support his conviction because the evidence failed to sufficiently corroborate the testimony of the State's accomplice witnesses, Savage and Kerkove.

To support a conviction based on the testimony of an accomplice, there must be corroborating evidence that tends to connect the defendant with the offense.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (2005).  Corroboration is not sufficient if it merely shows the offense was committed.  *Id.*  In making our review, we eliminate all of the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the offense.  *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).

The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be "other" evidence "tending to connect" the defendant to the offense alleged in the

–4–

indictment. *Id*. It may confirm a "mere detail" rather than the elements of the offense. *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.). Even "apparently insignificant incriminating circumstances" may provide sufficient corroboration. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999). We look at the particular facts and circumstances of each case and consider the combined force of all of the non-accomplice evidence that tends to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). No precise rule dictates the amount the evidence required to corroborate the testimony of an accomplice. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

Here, appellant argues the non-accomplice evidence does not tend to connect appellant to the offense. He argues that Murata could not identify the assailants and Lin did not testify; Sussan testified appellant never discussed what happened and she had no independent knowledge of the offense other than what she had been told by her brother, a co-conspirator; the police officers did not see or identify any of the individuals involved; the only "hard evidence" connected Kerkove to the offense; and Murata testified the driver never got out of the car.

Evidence tending to connect appellant to the offense included (1) Sussan's testimony that appellant, her brother, and the others left the motel together on the night of the robbery and (2) Harold Savage's testimony that Joshua called him at about 2 or 2:30 a.m. to pick him up and he could hear appellant's voice in the background. This evidence establishes that appellant was present with Savage and Kerkove both shortly before and shortly after the offense. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (stating that evidence appellant was in company of accomplice "at or near the time or place" of offense is proper corroborating evidence). In addition, just before the group fled the state, Sussan testified appellant threatened to harm them if anyone said anything about what happened the night before. When they were detained in Nebraska, appellant gave a false name before fleeing again. *See Hernandez v. State*,

939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (stating evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect accused with crime). Finally, the evidence showed that when detained in Nebraska, appellant was in the car used in the robbery. We conclude this evidence was sufficient to tend to connect appellant to the offense.

Further, considering all of the evidence, we conclude it was sufficient to establish appellant's participation in the robbery. Savage's statements to the police and Kerkove's testimony both established that appellant was one of the two people who got out of the car and attacked one of the people with a mallet. A mallet and metal rods were found in the SUV in Nebraska, and Murata testified he believed the weapons were likely those used in the attacks.

Even if appellant was merely the driver and did not get out of the car, he would still be liable as a party to the robbery. The evidence showed appellant was driving that night, and stopped the car in front of the house, drove away afterwards, went to a gas station, instructed Joshua to use the victim's credit card, and then led the police on a high-speed chase. Given the evidence in this case, the jury could have believed beyond a reasonable doubt that appellant committed aggravated robbery either as a principal or as a party. We overrule the second issue.

In his first issue, appellant argues the trial court abused its discretion by allowing Sussan to testify to a statement made by her brother, a co-defendant, over his hearsay objection. Specifically, Sussan testified that when Savage returned to the motel on the night of the robbery, he told her "they had gone out and hit some licks," which Sussan explained meant they had robbed some people and "they" referred to Savage, appellant, Kerkove, and Lee.

In response, the State makes two arguments: (1) appellant did not preserve his complaint because he later elicited the same testimony when cross-examining Sussan and (2) even if preserved, the statement was admissible as a statement against penal interest.

As to the first argument, we agree with the general proposition that the erroneous admission of testimony does not require reversal if the same fact is proven by other unobjected-to testimony. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). An exception exists, however, to allow defendants to meet, destroy, or explain evidence by introducing rebutting evidence. *Id*. at 719. Appellant's cross-examination of Sussan, and in particular questions regarding what her brother had told her once he returned to the motel, was an effort to meet or explain her testimony on direct. Consequently, we conclude appellant did not forfeit his complaint by questioning Sussan on these matters.

Turning to the second argument, an out-of-court statement offered for the truth of the matter asserted is hearsay and generally inadmissible. TEX. R. EVID. 801(d). The Texas Rules of Evidence recognize many exceptions to this general rule of inadmissibility, and one such exception is a statement against interest. TEX. R. EVID. 803(24). This exception "stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008). Determining whether a statement is admissible as a statement against interest involves a two-step inquiry. *Id*. First, the trial court determines whether the statement, considering all the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made the statement. *Id*. at 890–91. Savage's statement that they had "gone out and hit some licks" clearly subjected him to criminal liability because he admitted that he had robbed some people, and Savage would have been aware of this. The statement equally inculpated himself and the other persons he left the motel room with that night; it did not shift blame or minimize Savage's role. We therefore conclude it was sufficiently self-inculpatory to be reliable.

Second, corroborating evidence must "clearly indicate the trustworthiness of the statement." *Id.* A number of factors are relevant to this inquiry: (1) whether guilt of the declarant is inconsistent with guilt of the defendant, (2) whether the declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). The first two factors logically apply only when the defendant is the proponent of the statement against interest that tends to exculpate the defendant. When the statement is offered by the State to inculpate the defendant, as in the case before us, the first two factors are not relevant. *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004).

After returning to the motel room hours after leaving, Savage admitted he and the others committed the robberies. He made the spontaneous admission to his sister, not a police officer. *See Walter*, 267 S.W.3d at 898 (acknowledging that statements to friends, loved ones, or family members normally do not raise same trustworthiness concerns as those made to law enforcement because, in latter instance, declarant has obvious motive to minimize role and shift blame to others). The timing and spontaneity of the statement tend to establish its reliability.

In addition, the State developed independent corroborative facts that verified the statement. Evidence showed appellant left the motel room on the night of the robbery with Savage, Kerkove, and Lee in Sheffield's gold SUV. Murata testified he and his friend were attacked by two men, armed with a hammer-like weapon and a metal rod, who jumped out of a gold SUV, while a pink-haired woman stood by. A police officer spotted the vehicle shortly after the robberies and saw that one of the occupants had pink hair. During a high-speed chase, the occupants threw out Murata's wallet and its contents. Appellant and the group fled Texas. Eight days later, they were detained by a police officer in Nebraska. They were riding in

Sheffield's gold SUV. A search of the vehicle uncovered a mallet and metal rod, which Murata said were similar to the weapons used in the attack. We conclude these facts indicate Savage's statement to his sister was trustworthy and therefore admissible under rule 803(2). Because the trial court did not abuse its discretion in admitting the testimony, we overrule the first issue.[1]

Finally, our review of the record shows the judgments identify the defendant as John Bradley Whitney. At trial, appellant identified himself as John Brandon Whitney. In addition, all of the papers in this cause, including the indictment and jury charge, identify him as John Brandon Whitney. This Court has the authority to correct a judgment of the court below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Because we have the necessary information before us, we modify the trial court's judgments to identify the defendant as John Brandon Whitney.

We affirm the trial court's judgments as modified.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121374F.U05

---

[1] Appellant also suggests the trial court should have instructed the jury that Savage's statement to Sussan had to be corroborated by other non-accomplice evidence before it could be considered. But Savage's out-of-court statement was not accomplice "testimony" subject to the corroboration requirements of article 38.14 of the Texas Code of Criminal Procedure. *See Bingham v. State*, 913 S.W.2d 208, 211 (Tex. Crim. App. 1995) (op. on reh'g). Therefore, the statement did not require independent corroboration before the jury could rely on it to convict appellant.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN BRANDON WHITNEY, Appellant

No. 05-12-01374-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82172-2011.
Opinion delivered by Justice Francis;
Justices Lang-Miers and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect the defendant's name as John Brandon Whitney.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered December 12, 2013

/Molly Francis/
MOLLY FRANCIS
JUSTICE

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOHN BRANDON WHITNEY, Appellant

No. 05-12-01375-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82173-2011.
Opinion delivered by Justice Francis; Justices Lang-Miers and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To reflect the defendant's name as John Brandon Whitney.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered December 12, 2013

 

/Molly Francis/
MOLLY FRANCIS
JUSTICE

–11–