# NO. 12-17-00051-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GEORGE L. MULLIN,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

George L. Mullin appeals his convictions for criminal mischief and two counts of theft of copper. In five issues, Appellant argues that the evidence is insufficient to support his conviction. We modify and affirm as modified.

### BACKGROUND

Appellant was charged by indictment with criminal mischief, burglary of a building, and two counts of theft of copper. He pleaded "not guilty," and the matter proceeded to a bench trial.

At trial, the evidence showed that a break-in occurred at the clubhouse of the Pines Gun Club in Lufkin. A television was stolen from the clubhouse. Copper cables were removed from one of the target machines on the shooting range. At a nearby cell phone tower, fiber lines were cut and damaged, and copper was taken from that site as well.

The police took photographs of a set of shoe prints and a set of tire tracks leading from the clubhouse to the cell phone tower. Later, Detective Michael Allen with the Angelina County Sheriff's Department was talking to Richard Gilbert III about another matter when he saw a pair of tennis shoes hanging on a clothesline. He noticed that the shoes had a tread design similar to that of the shoe prints in the photographs. Allen asked Gilbert III who owned the shoes, and

Gilbert III said that they belonged to Appellant. Gilbert III subsequently told Allen that he and Appellant committed the offenses at the gun club and the cell phone tower.

Ultimately, the trial court found Appellant "guilty" of criminal mischief and two counts of theft of copper, and "not guilty" of burglary of a building. The trial court assessed his punishment at imprisonment for eighteen months in each conviction. This appeal followed.

<u>**EVIDENTIARY SUFFICIENCY**</u>

In Appellant's first, second, and third issues, he argues that the evidence of ownership is insufficient to support his convictions for criminal mischief and theft of copper. In Appellant's fourth issue, he argues that the evidence of identity is insufficient to support his convictions for theft of copper. In Appellant's fifth issue, he argues that the evidence is insufficient to support his convictions because the accomplice witness testimony was not sufficiently corroborated.

<u>**Standard of Review and Applicable Law**</u>

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Considering the evidence "in the light most favorable to the verdict" under this standard requires the reviewing court to defer to the trier of fact's credibility and weight determinations, because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To satisfy the elements of criminal mischief as alleged in Count I of the indictment, the State was required to prove that Appellant intentionally or knowingly damaged or destroyed tangible property, specifically wires or cable lines, by cutting them, without the effective consent

2

of AT&T, the owner of the property, causing pecuniary loss in the amount of $1,500 or more but less than $20,000.  *See* TEX. PENAL CODE ANN. § 28.03 (West Supp. 2016).

To satisfy the elements of theft as alleged in Count II of the indictment, the State was required to prove that Appellant unlawfully appropriated, by acquiring or otherwise exercising control over, copper valued at $1,500 or more but less than $20,000, from Larry Freeman, its owner, without his consent and with intent to deprive him of it.  *See id.* § 31.03(a), (b)(1), (e)(4)(F)(iii) (West Supp. 2016).

To satisfy the elements of theft as alleged in Count IV of the indictment, the State was required to prove that Appellant unlawfully appropriated, by acquiring or otherwise exercising control over, copper valued at less than $20,000, from Chuck Griffith, its owner, without his consent and with intent to deprive him of it.  *See id.*

### Ownership—Cell Phone Tower

In Appellant's first and second issues, he contends that the evidence is insufficient to sustain his convictions for criminal mischief and theft of copper at the cell phone tower. Combining these issues, he bases his insufficiency argument on the fact that the State failed to prove AT&T was the owner of the cell phone tower.  However, the State was not required to prove that AT&T was the owner of the cell phone tower.  Rather, Count I of the indictment—the criminal mischief charge—alleged that AT&T owned the "wires and/or cable lines" that were damaged or destroyed.  Count II alleged that Larry Freeman—an AT&T technician—owned the copper that was stolen.  The State proved these facts.

"Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.  *Id*. § 1.07(a)(35) (West Supp. 2016).  Freeman testified that AT&T did not own the tower, but rather leased the space from another entity.  However, he testified that AT&T owns "[a]ll of the equipment and everything that's there" at the site.  Freeman also referred to the wires and cable lines as "our transmission lines" and "our fiber lines."  Based on this evidence, a rational trier of fact could have found that AT&T owned the wires or cable lines as alleged in the indictment. *See id.*  Viewing all of the evidence in the light most favorable to the trial court's verdict, we conclude that the trial court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed criminal mischief.  *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see*

3

*also Brooks*, 323 S.W.3d at 899; TEX. PENAL CODE ANN. § 28.03. Accordingly, we overrule Appellant's first issue.

We further conclude that the evidence shows AT&T owned the copper stolen from the cell phone tower site. Freeman described a photograph of a cable at the site as "copper from where the copper was cut for part of our grounding." Freeman further testified regarding AT&T's ownership of the copper as follows:

DEFENSE COUNSEL: Now, as far as the copper, you're not the owner of the copper? You personally?

FREEMAN: No, I'm not. No.

DEFENSE COUNSEL: You don't own anything personally.

FREEMAN: No, not at any of the sites.

DEFENSE COUNSEL: You're an employee.

FREEMAN: Yes.

DEFENSE COUNSEL: Your job is to assess it. Get it fixed.

FREEMAN: Mm-hmm.

DEFENSE COUNSEL: But nobody excised any copper that you're the owner of.

FREEMAN: No.

DEFENSE COUNSEL: Now, it's AT&T by virtue of their lease. Would that be right?

FREEMAN: Yes, it is.

DEFENSE COUNSEL: Even though these other companies may have built it. They supplied parts of it.

FREEMAN: We actually pay for them.

DEFENSE COUNSEL: But you lease it from them, just like if I had a house and I was the owner and you rented my house, then—

FREEMAN: No, what we do is this: The—I think it's Crown Council, American Tower or whoever owns that site; they purchase the land. Okay.

Then we go around and if we deem that's where we want to put a site at, then we lease space from them. All of the equipment and everything that's there, we purchase it ourselves, and we have to put it there.

DEFENSE COUNSEL: So AT&T would own all of this stuff?

FREEMAN: Yes, they do.

Thus, the evidence supports a finding that AT&T owned the copper at the tower site.

Furthermore, the evidence supports a finding that Freeman was an "owner" of the copper as that term is defined in the penal code because he was in possession of it. *See* TEX. PENAL CODE ANN. § 1.07(a)(35). "Possession" means actual care, custody, control, or management. *Id.* § 1.07(a)(39). Regarding Freeman's possession of the copper, he testified as follows:

PROSECUTOR:               What do you do for a living, Mr. Freeman?

FREEMAN:                  I'm in fourth AT&T technician.

PROSECUTOR:               And what are you[r] general job duties as a technician?

FREEMAN:                  We have spikes that we take care of in the communication part for cell phones.

. . . .

PROSECUTOR: Were you on duty last year, July 3rd of 2015?

FREEMAN:      Yes, I was.

PROSECUTOR: Is there a general area that you're responsible for?

FREEMAN:      Yes, there is, but that particular weekend, I was on call for our whole market because we have people that's on call during the weekends or after hours and things like that; that we're responsible for Marshall, Tyler, Longview, Nacogdoches, Lufkin.

. . . .

PROSECUTOR: What do you typically get called for when you're on call?

FREEMAN:      Power outages or some of the equipment may be out of service. Things like that.

The foregoing evidence is sufficient to show that Freeman had the duty of controlling and managing AT&T's equipment at the cell phone tower site. *See id.* Based on this evidence, a rational trier of fact could have found that Freeman was an "owner" of the copper because he had "possession" of it. *See id.*; *id.* § 1.07(a)(35); *see also* **Eaton v. State**, 533 S.W.2d 33, 35 (Tex. Crim. App. 1976) (testimony that regional supervisor had duty of controlling and auditing petroleum corporation's service stations in a particular area was sufficient to show supervisor had "possession" of service station damaged in arson and was therefore an "owner" under penal code). Viewing all of the evidence in the light most favorable to the trial court's verdict, we conclude that the trial court was rationally justified in finding, beyond a reasonable doubt, that

Appellant committed theft of copper from Freeman. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Brooks***, 323 S.W.3d at 899; TEX. PENAL CODE ANN. § 31.03(a), (b)(1), (e)(4)(F)(iii). Accordingly, we overrule Appellant's second issue.

**Ownership—Gun Club**

In Appellant's third issue, he argues that the evidence is insufficient to sustain his conviction for theft of copper at the gun club because the State failed to prove that Griffith was the owner of the copper. Appellant contends that only the gun club officers are "owners" of the copper.

Although Griffith is not an officer of the gun club, the evidence is sufficient to show that he was an owner of the copper as defined in the penal code. *See* TEX. PENAL CODE ANN. § 1.07(a)(35). Griffith testified that he is a member of the Pines Gun Club. He shoots there, and is also a certified shotgun instructor who teaches children to shoot. Griffith further testified as follows:

PROSECUTOR: [M]r. Griffith, you're not the actual owner of the gun club?

GRIFFITH: I am not.

PROSECUTOR: But you do have a combination to it?

GRIFFITH: I am. I'm an active member, and because I'm the only certified instructor in the area, so I use the club on behalf of the club heavily.

PROSECUTOR: So you certainly have permission to be inside the club and use the TV and to use the shooting range and those type of things?

GRIFFITH: Full access with the full approval of the board.

. . . .

DEFENSE COUNSEL: [T]he officers, as far as you know in the five years you've been a member, what's their job?

GRIFFITH: To run the Pines Gun Club on behalf of the members. It's member-owned.

The foregoing evidence shows that the Pines Gun Club is owned by its members, and Griffith is a member. Therefore, the evidence shows that Griffith is one of the owners of the club. *See **id.*** When property is owned in common or jointly by two or more people, ownership of the property may be alleged to be in all or any of them. TEX. CODE CRIM. PROC. ANN. art.

6

21.08 (West 2009). Viewing all of the evidence in the light most favorable to the trial court's verdict, we conclude that the trial court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed theft of copper from Griffith. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899; TEX. PENAL CODE ANN. § 31.03(a), (b)(1), (e)(4)(F)(iii). Accordingly, we overrule Appellant's third issue.

**Identity**

In Appellant's fourth issue, he argues that the evidence is insufficient to sustain his convictions for theft of copper because the State failed to show that the copper he sold shortly after the thefts was the copper that was stolen in this case. We note that selling stolen copper is not an essential element of theft of copper that the State was required to prove. *See* TEX. PENAL CODE ANN. § 31.03(a), (b)(1), (e)(4)(F)(iii). However, we construe Appellant's argument as a sufficiency challenge to the evidence of his identity as the thief and address the issue.

Angelina County Deputy Robert Denby testified that on July 4, 2015, he responded to a call about a burglary at Pines Gun Club. A clubhouse window was broken, a television set was taken, and some copper wire was removed from the outdoor target machines. While investigating the offenses at the club, Denby saw and photographed a set of shoe prints and a set of tire tracks leading from the club to a cell phone tower approximately 400 to 600 yards away. Few other tracks or prints were visible because of prior rainfall. At the tower site, Denby noticed some damage to the equipment. He learned that a Deputy Henley had been called to the site earlier that day after cell phone users lost service. Denby wrote a report and was not involved in any subsequent investigation.

Detective Allen testified that on July 14, 2015, he was working on a diesel theft case involving a vehicle owned by Richard Gilbert Jr., when he discovered a clue in this case. Allen went to Gilbert Jr.'s property to speak with him about the diesel theft. When Allen arrived, he saw Appellant walking around outside. Gilbert Jr.'s son, Richard Gilbert III, came out of the residence and spoke with Allen. While Allen was speaking with Gilbert III, he saw a pair of tennis shoes on a clothesline. He noticed that the shoes had a tread design similar to the shoe prints in this case. He asked Gilbert III who the shoes belonged to, and he said that they belonged to Appellant. Allen then asked whether Gilbert III had been to the shooting range or the cell phone tower. Gilbert III said that he and Appellant had been there and had cut the lock at the cell phone tower site. He further stated that the stolen copper was sold at a scrap yard

known as "DK." Gilbert III said that he could not speak freely at that time because of Appellant's presence, but that he would give Allen more information later. Allen arranged a time for Gilbert III to meet him at the sheriff's office. Allen testified that Gilbert III did not appear to be under the influence of drugs or alcohol at the time.

Detective Allen subsequently went to DK and discovered that Appellant had sold some copper there. Gilbert III did not appear at the sheriff's office at the arranged meeting time, but Allen spoke with him again in jail after he was arrested. Gilbert III explained to Allen the details of how he and Appellant committed the offenses at the shooting range and the cell phone tower site. He told Allen that Appellant sold an additional amount of the stolen copper at East Texas Recycling. The owner of East Texas Recycling testified that his records showed Appellant sold copper there on July 6, 2015. He could not say where the copper originated.

On cross-examination, defense counsel questioned Detective Allen about whether the copper that Appellant sold could be identified as the stolen copper. Allen testified as follows:

DEFENSE COUNSEL: Detective Allen, at one point, it appears Detective Henley referred to you in his report, and he said, "Detective Allen checked all the local scrap metal locations in Angelina County, and no one had sold copper matching the description given. Detective Allen pended this case due to the leads or suspects in this case."

DETECTIVE ALLEN: Yes, and what that means there is the type of wire that was stolen there. I was looking for the wire itself, and, of course, whenever they take the copper, sometimes they burn the coating off of it. And that's what I was looking for the particular wire at that time—

DEFENSE COUNSEL: Okay.

DETECTIVE ALLEN: —for that.

DEFENSE COUNSEL: So the copper that was discovered sold at DKG and East Texas Recycling, can you match copper and say this copper came from there and this copper came from there?

DETECTIVE ALLEN: No, sir.

DEFENSE COUNSEL: But—so I assumed, then, you just found where copper was sold at DKG and the recycling place?

DETECTIVE ALLEN: Yes, yes. And it was matching up with the dates that I was looking at.

DEFENSE COUNSEL: And the same time frame?

DETECTIVE ALLEN: Yes, and the same time frame.

DEFENSE COUNSEL: But there's really no way to identify?

DETECTIVE ALLEN: No, I couldn't say one hundred percent sure that this came from this

8

certain place, no.

DEFENSE COUNSEL:     Okay.

DETECTIVE ALLEN:     No, if it had the coating on it, and it had some kind of numbers or something, yes, you would be able to say that; but without that, no, there's no way to.

Defense counsel also questioned Detective Allen regarding whether the shoes on the clothesline were matched to the shoe prints at the scene. Allen admitted that he was not an expert on shoe tread. However, he placed the photographs side by side and they appeared to be a "pretty close match." We inspected the photographs and similarly conclude that the shoes appear capable of making the partial shoe prints located at the scene.

Gilbert III testified that he committed the offenses at the gun club and the cell phone tower alone. He said that he was under the influence of drugs at the time and could barely remember going there. He could not remember whether he broke the clubhouse window, whether he entered the clubhouse, specifically where he obtained the copper from the gun club, how he entered the tower site, or what kind of shoes he was wearing. He vaguely remembered talking to Detective Allen about Gilbert Jr., but he could not remember talking about the current offenses. On cross-examination, Gilbert III said that he did not remember whether he committed the offenses alone or with an accomplice. Gilbert III testified that Appellant is his cousin.

Appellant testified that on the day Detective Allen went to Gilbert Jr.'s property, he was there to work on Gilbert Jr.'s truck. Appellant said that at some point he "was asked" to sell some copper at East Texas Recycling. Appellant said "they" had a small amount of copper that was "dressed out," meaning it was stripped of its coating. "They" asked him if he would sell the copper using his "cash card," which was the only means of obtaining cash for the copper. Gilbert III gave him the copper, and he drove Gilbert Jr.'s other truck to go and sell it. Appellant denied going to the gun club or the cell phone tower, or that he owned or ever wore tennis shoes. Appellant testified that he had been to the penitentiary five or six times previously, and that he, Gilbert Jr., and Gilbert III were heavily using methamphetamines, marijuana, and alcohol at the time of the offenses.

Despite the fact that the copper Appellant sold was stripped of its identifying information, there is sufficient evidence in the record to show that it was the stolen copper, and that Appellant participated in the thefts. When Detective Allen asked Gilbert III about the shoes on the clothesline, Gilbert III—likely unaware of why Allen was interested in the shoes—said

9

that they belonged to Appellant. Additionally, Gilbert III expressly implicated Appellant in the commission of the offenses on two separate occasions. He stated that Appellant sold the stolen copper at two particular locations. Business records at those locations confirmed that Appellant sold copper there during the relevant time frame.

In support of his argument, Appellant relies in part on Gilbert III's testimony that he acted alone, while ignoring Gilbert III's statements to Detective Allen. Although Gilbert III testified that he acted alone, the trial court, as the sole judge of the witnesses' credibility and the weight to be given their testimony, could have believed his statements to Allen rather than his trial testimony. *See Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Viewing all of the evidence in the light most favorable to the trial court's verdict, we conclude that the trial court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed two counts of theft of copper. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Brooks*, 323 S.W.3d at 899; TEX. PENAL CODE ANN. § 31.03(a), (b)(1), (e)(4)(F)(iii). Accordingly, we overrule Appellant's fourth issue.

**Accomplice Witness Testimony**

In Appellant's fifth issue, he argues that the evidence is insufficient to sustain his convictions because Gilbert III's accomplice witness testimony was not corroborated as required under code of criminal procedure Article 38.14. Under that provision, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). A witness is an accomplice as a matter of law if that individual has been or could have been indicted for the same offense. *Cocke v. State*, 201 S.W.3d 744, 747-48 (Tex. Crim. App. 2006).

In this case, because the record indicates that Gilbert III was also convicted of these offenses, Appellant is correct that Gilbert III is an accomplice as a matter of law. *See id.* However, because Gilbert III testified that he committed the offenses alone, it cannot be said that Appellant's convictions were "had upon" his trial testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Therefore, Article 38.14 does not apply to Gilbert III's trial testimony. *See Selman v. State*, 807 S.W.2d 310, 311 (Tex. Crim. App. 1991) ("[A]ccomplice-witness testimony must be corroborated . . . only when the State calls the witness and seeks to rely on such witness's

10

testimony."). Furthermore, Gilbert III's out-of-court statements to Detective Allen do not qualify as "testimony" for purposes of Article 38.14. *See **Bingham v. State***, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995) ("[W]e construe the 'testimony' contemplated by Article 38.14 to be of the narrower, evidentiary kind, the kind adduced in open court by live witnesses under oath."). Consequently, Appellant's argument is without merit. Accordingly, we overrule Appellant's fifth issue.

## Summary

Viewing all of the evidence in the light most favorable to the trial court's verdict, we conclude that the trial court was rationally justified in finding, beyond a reasonable doubt, that Appellant committed criminal mischief and two counts of theft of copper. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Brooks***, 323 S.W.3d at 899; Tex. Penal Code Ann. §§ 28.03, 31.03(a), (b)(1), (e)(4)(F)(iii).

## JUDGMENT ERROR

The appellate record shows that Appellant was indicted for burglary of a building in addition to the three other charges. Both parties acknowledge in their briefs that he was acquitted of that charge. However, the trial court's judgment indicates that Appellant was convicted of that offense. Neither party has requested that we reform the incorrect judgment. But our authority to reform an incorrect judgment is not dependent on the request of any party. ***Rhoten v. State***, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).

A judgment is simply the written declaration and embodiment of the trial court's oral pronouncement. ***Taylor v. State***, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). When there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls. *See **id.*** An appellate court has the authority to correct a trial court's judgment to make the record speak the truth when it has the necessary data and information. Tex. R. App. P. 43.2(b); ***Banks v. State***, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986) (reforming judgment to reflect trial court's pronouncement cumulating sentences); ***St. Julian v. State***, 132 S.W.3d 512, 517 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (reforming judgment to reflect offense named in jury's signed verdict); ***Asberry v. State***, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

11

Here, the record shows that after hearing the evidence, the trial court stated, "I find that there's sufficient evidence to find the Defendant guilty of Counts I, II, and IV. I will enter an acquittal as to Count number III." Count III of the indictment is the burglary charge. Thus, there is a conflict between the oral pronouncement and the written judgment, and we have the necessary information to correct the judgment and make it speak the truth. *See id.*; *Taylor*, 131 S.W.3d at 500. We conclude the judgment should be modified to reflect that Appellant was not convicted of Count III—burglary of a building.

Furthermore, the judgment reflects that Appellant pleaded "guilty" to all four offenses. However, the trial record shows that he pleaded "not guilty" to the offenses. Thus, we have the necessary information to correct the judgment and make it speak the truth regarding Appellant's pleas. *See Asberry*, 813 S.W.2d at 529. We conclude that the judgment should be modified to reflect that Appellant pleaded "not guilty" to the offenses.

## DISPOSITION

We have overruled Appellant's first through fifth issues, and have concluded there is error in the judgment that was not raised by either party. Accordingly, we *modify* the judgment of the trial court to reflect that Appellant was not convicted of Count III—burglary of a building, and that he pleaded "not guilty" to the charged offenses. We *affirm* the judgment *as modified*.

GREG NEELEY
Justice

Opinion delivered October 18, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 18, 2017**

**NO. 12-17-00051-CR**

**GEORGE L. MULLIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2016-0417)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified** to reflect that Appellant was not convicted of Count III—burglary of a building, and that he pleaded "not guilty" to the charged offenses; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*