**Opinion filed February 28, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00071-CR

_____

## JAMES ANTHONY MARMOLEJO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR48257**

## M E M O R A N D U M   O P I N I O N

The jury convicted James Anthony Marmolejo of burglary of a building and assessed his punishment at confinement in a state jail facility for two years; it also assessed a $2,000 fine. The trial court sentenced Appellant accordingly. We affirm.

Appellant presents two issues on appeal. In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, Appellant asserts that the evidence is insufficient to show that he had the intent to

commit theft. In his second issue, Appellant claims that the trial court erred when it allowed the State to present evidence in violation of his Sixth Amendment right of confrontation.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight to be afforded their testimony. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Intent may be inferred from circumstantial evidence, such as acts, words, and the conduct of an appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Around 5:00 a.m. on the day of the alleged offense, Officer Arturo Garcia, Officer Alexander Duwel, and Sergeant Brian Stacey, all members of the Midland

Police Department, responded to an alarm at Fiesta Foods, a grocery store in Midland. At the time, Fiesta Foods was closed to the public.

Officer Garcia was the first officer to arrive at the Fiesta Foods location. As Officer Garcia drove into the parking lot, he noticed two men standing by the entrance of the grocery store. Officer Garcia determined shortly thereafter that Appellant was one of the men and that the other was Ismael Monarrez. According to Officer Garcia, Appellant and Monarrez started to walk away when they noticed him drive into the parking lot.

Officer Garcia got out of his vehicle, detained Appellant and Monarrez, and searched them. Officer Garcia found a "fixed blade" knife and an "ice pick" in one of Appellant's pockets. At trial, Officer Garcia testified that the tips of the blade and ice pick appeared to be "damaged" and that such things are "commonly used for burglaries."

Appellant informed Officer Garcia that Appellant had a firearm in his pants. Officer Garcia retrieved the firearm, and although it looked real, Officer Garcia immediately realized that it was fake; it "seem[ed] like [it had] been spray-painted to . . . make it more realistic."

Officer Garcia also noticed that Appellant and Monarrez were covered in dust and cobwebs. When Officer Garcia questioned them about their dirty clothes, Appellant told him that "they were walking through a field."

While Officer Garcia was talking to Appellant and Monarrez, Officer Duwel and Sergeant Stacey arrived at the Fiesta Foods location. They searched the outside of the Fiesta Foods premises, while Officer Garcia stayed with Appellant and Monarrez. Officer Duwel and Sergeant Stacey testified that they found that a back door of the Fiesta Foods building was partially ajar. Officer Duwel testified that the door appeared to have been "pried open" and was "half an inch off the door frame, with some damage around the actual locking mechanism."

3

When Officer Duwel and Sergeant Stacey opened the door, they found a small, dirty room filled with refrigerator compressors. Sergeant Stacey described the room as "covered in dirt and spiderwebs," and Officer Duwel testified that the floor inside the room was "dry and dusty." Officer Duwel and Sergeant Stacey also saw muddy footprints and a ladder that led to a crawl space. The muddy footprints were located near the ladder, and the ground outside the store was wet.

Officer Duwel and Sergeant Stacey climbed the ladder to examine the crawl space. Officer Duwel testified that the crawl space, like the rest of the room, was "extremely dusty" and "full of cobwebs." Officer Duwel shined his flashlight into the crawl space and determined that it did not appear to lead into the main part of the store. After Officer Duwel and Sergeant Stacey left the room, their uniforms, like Appellant's and Monarrez's clothes, were covered in dirt and cobwebs.

Around 6:00 a.m., John Sickler, the Fiesta Foods store director, arrived at the store. Sickler opened the main doors so that the officers could search inside. The officers did not find anyone else inside. Sickler testified that an in-store video did not reflect that anyone had entered the store.

The officers arrested Appellant and Monarrez, and the State later charged Appellant and Monarrez with burglary of a building. Eventually, Monarrez pleaded guilty and was sentenced to "9 months state jail."

At Appellant's trial, the State called Monarrez as a witness. Monarrez admitted that he burglarized the Fiesta Foods store and that Appellant was with him when he did it. However, Monarrez claimed that Appellant "didn't have nothing to do with it." Monarrez testified that he entered the building alone and that Appellant waited outside.

Earlier, the State had conducted an interview with Monarrez. At trial, the prosecutor questioned Monarrez about the interview. The prosecutor asked Monarrez whether he remembered the interview. Monarrez, in response, testified,

4

"I told you the same thing." The prosecutor then asked: "[I]sn't it true you told me that you and [Appellant] climbed up on the air conditioning units and went on the roof?" Appellant said, "No" and "I can't remember that." Monarrez testified that he entered the building alone through a vent in the roof and followed the vent to a dirty room "[t]o the back of the electricity and stuff." When he opened a door to leave the building, he triggered the alarm. The prosecutor asked Monarrez: "Is it your testimony today that [Appellant] did not go into that room with you?" Monarrez said, "No, sir, he did not go in there where that was." Monarrez testified that, when he left the building, he went to the front of the store "and that's when I seen [Appellant]."

Next, the State called Andrew Stallings, an assistant district attorney for Midland County, as a witness. Stallings was present for Monarrez's pretrial interview. Stallings testified that, when Monarrez talked about the burglary of Fiesta Foods, Monarrez repeatedly used the pronoun "we." Stallings specified that Monarrez said that *they* got on the roof "to look . . . for a view of Midland on top of the store" and then *they* went through a vent to a "utility room" or some "back room at the Fiesta Foods." Stallings testified that Monarrez "said *they* looked around for a little while" and *they* "left when [*they*] saw there was nothing in there" (emphasis added).

Intent to commit theft is one element of the offense of burglary of a building as charged in this case, and it is the element to which Appellant directs his insufficiency challenge. TEX. PENAL CODE ANN. § 30.02(a)(1) (West Supp. 2018). A person intends to commit theft if he intends to unlawfully appropriate property with intent to deprive the owner of the property. *Id.* § 31.03(a).

Appellant bases a part of his insufficiency argument on the fact that there is no evidence that he took any property from Fiesta Foods. However, once Appellant "entered" Fiesta Foods with the intent to commit theft, the offense of burglary of a

5

building, as charged in this case, was complete; it was not necessary for Appellant to take any merchandise. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994).

Appellant further argues that the evidence is insufficient to establish that he intended to commit theft because Stallings's testimony, in which Stallings recounted Monarrez's out-of-court statements, is basically the "testimony of an accomplice" within the meaning of Article 38.14 of the Texas Code of Criminal Procedure. As such, Appellant argues that Stallings's testimony should not be considered in our review of the sufficiency of the evidence because the State failed to provide "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We disagree.

Article 38.14, the accomplice-witness rule, provides, in part, that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." *Id.* But an out-of-court declaration of an accomplice, which is repeated in court by a non-accomplice witness, is not the "testimony of an accomplice" under Article 38.14. *See Cocke*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006); *Bingham v. State*, 913 S.W.2d 208, 213 (Tex. Crim. App. 1995). We hold that Stallings's testimony is not the "testimony of an accomplice" witness.

Appellant also maintains that we should not afford any weight to Stallings's testimony because Stallings was an assistant district attorney for Midland County and, thus, his testimony "gave an appearance that the State had greater credibility than the other witnesses." However, Appellant did not make this objection in the trial court, and he cannot make the claim for the first time on appeal. *See* TEX. R. APP. P. 33.1; *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997).

The State's evidence, viewed in the light most favorable to the verdict, supports a finding that, on the date of the alleged offense, Appellant and Monarrez

6

entered the Fiesta Foods store sometime before 5:08 a.m., without the consent of the owner. An entry made in the nighttime without consent is presumed to have been made with the intent to commit theft. *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982); *see Powell v. State*, Nos. 10-09-00364-CR, 10-09-00365-CR, 2011 WL 2242483, at \*4 (Tex. App.—Waco June 8, 2011, no pet.) (mem. op., not designated for publication) (applying the presumption when the evidence reflected that the defendant entered a building at 5:30 a.m.). In addition, Stallings testified that Monarrez said that they left Fiesta Foods "when [they] saw there was nothing in there." Although Monarrez testified at trial that Appellant "didn't have nothing to do with it," the jury was entitled to disbelieve Monarrez's testimony.

Based on the record before us, we believe that a rational trier of fact could have found the essential elements of the offense of burglary of a building beyond a reasonable doubt, including that Appellant had the intent to commit theft when he entered Fiesta Foods. We overrule Appellant's first issue on appeal.

In his second issue, Appellant contends that "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE ASSISTANT DISTRICT ATTORNEY TO TESTISFY [sic] AND IMPEACH THE ACCOMPLICE THEREBY ALLOWING HEARSAY STATEMENTS THAT IMPLICATED [APPELLANT]." Appellant then argues that the trial court violated his Sixth Amendment right to confrontation when it did not give Appellant a "proper opportunity" to cross-examine Monarrez about his prior inconsistent statements, that the trial court erred when it allowed the State to call Monarrez as a witness just to impeach him, that Appellant was deprived of the opportunity to properly confront Monarrez because Monarrez never admitted to the prior inconsistent statements and because Monarrez's testimony was "substantially different" from what Stallings testified that Monarrez said.

We note that Appellant did not make any of these objections in the trial court. Accordingly, Appellant has failed to preserve error. *See* TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).

But even if we assume, without deciding, that Appellant had preserved error, Appellant's Sixth Amendment rights were not violated. Contrary to the circumstances in the authorities relied upon by Appellant, Monarrez appeared and testified at trial and did not assert any Fifth Amendment privilege. *See Lee v. Illinois*, 476 U.S. 530 (1986) (codefendant did not testify at trial); *see also Lilly v. Virginia*, 527 U.S. 116 (1999) (accomplice witness whose hearsay statement was in question did not testify at trial); *Douglas v. Alabama*, 380 U.S. 415 (1965) (witness continually invoked Fifth Amendment privilege and thereby deprived defendant of effective cross-examination).

The record in this appeal not only reflects that Appellant was afforded every opportunity to cross-examine Monarrez during Appellant's trial, he in fact did cross-examine Monarrez. This satisfied the mandates of the Confrontation Clause. *Chappell v. State*, No. 11-96-00216-CR, 1998 WL 34193651, at *2 (Tex. App.—Eastland June 18, 1998, no pet.) (not designated for publication). Although "it is a violation of [a] defendant's Sixth Amendment right to confrontation to introduce into evidence a *nontestifying* co-defendant's confession," where a codefendant takes the stand, denies an alleged out-of-court statement that implicates the defendant, and testifies favorably to the defendant, the defendant's confrontation rights are not violated. *Ricondo v. State*, 657 S.W.2d 439, 445–46 (Tex. App.—San Antonio 1983, no pet.) (citing *Nelson v. O'Neil*, 402 U.S. 622, 630 (1971); *Thomas v. State*, 533 S.W.2d 796, 797 (Tex. Crim. App. 1976)).

Insofar as Appellant's argument might be considered to question the effect or extent of Stallings's testimony, Monarrez did not "unequivocally" admit to the prior inconsistent statements as his own, and Stallings's testimony was admissible at trial

to impeach him.  TEX. R. EVID. 613; *Lafoon v. State*, 543 S.W.2d 617, 621 (Tex. Crim. App. 1976); *Garcia v. State*, No. 11-16-00347-CR, 2018 WL 6928986, at *3 (Tex. App.—Eastland Dec. 31, 2018, no pet) (mem. op., not designated for publication).  However, Appellant did not request an instruction that would limit the purposes for which the jury could consider Stallings's testimony.  Therefore, Stallings's testimony was admissible for all purposes.  *See* TEX. R. EVID. 105(a).  For all the above reasons, we overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


February 28, 2019

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by  assignment.